# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 10-1462

WILLIAM E. FREEMAN, PETITIONER,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before HAGEL, MOORMAN, and LANCE, *Judges.*

## O R D E R

On April 30, 2010, the petitioner filed with the Court a petition for extraordinary relief in the nature of a writ of mandamus. That petition requested that the Court issue a writ directing the Secretary to accept the petitioner's Notice of Disagreement (NOD) with the appointment of a federal fiduciary instead of the petitioner's sister, Debora C. Allen, as fiduciary to manage the petitioner's VA benefits. The Secretary opposes the petition on the grounds that the determination of whom to appoint as fiduciary to manage the petitioner's VA benefits is a matter within the sole discretion of the Secretary and outside the jurisdiction of this Court or any Court. For the reasons that follow, the Court grants the petitioner's request for extraordinary relief and will issue a writ of mandamus.

## I.  FACTS

The petitioner served in the U.S. Army from February 4, 1972, to February 5, 1975, and from February 6, 1975, to May 6, 1976. In a rating decision issued by the Waco, Texas, VA regional office (RO) on December 22, 2009, the petitioner was granted service connection for paranoid schizophrenia and awarded a 100% disability rating with an effective date of December 22, 2008. He was also granted entitlement to special monthly compensation based on aid and attendance. That same decision found the petitioner to be incompetent to handle the disbursement of funds due to him as a result of this award, based on a VA medical examination that had found the petitioner to be incompetent for purposes of handling his funds received by VA and on a lay statement from the petitioner's sister that also indicated that the petitioner was incompetent for that purpose. On

February 8, 2010, the RO sent a letter to the petitioner indicating that it had appointed Shelia Horace as a paid fiduciary to exercise control over his VA benefits. On February 19, 2010, the petitioner filed an NOD with both the RO's December 2009 rating decision and with the February 8, 2010, determination to appoint Ms. Horace as fiduciary.[1] On February 23, 2010, the RO sent a letter to the petitioner indicating that it was not possible for him to file an NOD regarding the selection of his fiduciary. On February 26, 2010, the petitioner, through his sister, renewed his objection to the appointment of Ms. Horace.

After a subsequent exchange of correspondence regarding issues not presently before the Court, the petitioner filed his petition for extraordinary relief with this Court on April 20, 2010. On September 3, 2010, this Court ordered the Secretary to respond to the petition, and the Secretary's response was received on September 17, 2010. The Court then determined that it would hear oral argument in this case as well as receive additional briefing from the parties. Subsequent to that order, amicus curiae, the National Organization of Veterans' Advocates, was granted leave to file a brief and be heard at oral argument. On February 16 and 18, 2011, amicus and the petitioner filed opposed motions for leave to file supplemental information. The Court heard oral argument on the merits of the petition and the outstanding motions to supplement on February 23, 2011. On March 7, 2011, the petitioner filed an additional motion for leave to file supplemental information, which was again opposed by the Secretary.

## II. PRELIMINARY MATTERS

As a preliminary matter, the Court will address the outstanding motions for leave to file supplemental information. The February 16 and 18, 2011, motions to supplement seek leave to include in the record documents—a pleading filed by the Secretary in the U.S. District Court for the Northern District of Texas and correspondence sent to the petitioner by VA in February and March 2010—that the petitioner and amicus argue demonstrate inconsistent positions asserted by the Secretary, both in this matter and in other litigation, with regard to the issue presented by the instant

---

[1] The petitioner's initial NOD, in addition to his request to change his fiduciary, requested an earlier effective date. The NOD concerning the effective date was subsequently accepted by the Secretary and is therefore not at issue in this petition.

petition. The Court will grant these motions and consider the exhibits attached to them.

As noted above, the petitioner filed another motion to supplement on March 7, 2011. However, on February 18, 2011, the Court ordered that additional filings in this matter were to be electronically filed no later than 5:00 p.m. on February 21, 2011. Accordingly, the Court will deny the petitioner's March 7, 2011, motion to supplement.

## III. PARTIES' CONTENTIONS

### A. Petitioner's Argument

The petitioner asserts that the plain language of the statutes in question is determinative of the jurisdictional question before the Court. Specifically, the petitioner argues that 38 U.S.C. § 5502 indicates that the appointment of a fiduciary is a matter that "affects the provision of benefits" and is thus covered by 38 U.S.C. § 511(a). Section 7104 of title 38 of the U.S. Code provides that any decision of the Secretary that is covered by section 511(a) is entitled to one review on appeal to the Secretary. The Board is the final agency authority on any such appeals. Therefore, the Board can review the appointment of a fiduciary, and the Court may review any such decision by the Board. 38 U.S.C. § 7252(a).

The petitioner asserts that there are sufficient statutory and regulatory standards to permit effective judicial review of the Secretary's determination of an appropriate fiduciary. The petitioner points to 38 U.S.C. §§ 5502 and 5507 for statutory support and to 38 C.F.R. §13.55 for regulatory guidance. The petitioner asserts that these provisions provide a clearly delineated process for the Secretary to follow when appointing a fiduciary and that the Secretary's execution of the process may be reviewed by the Board and this Court.[2]

While the petitioner acknowledges that the Secretary has some discretion in the appointment of a fiduciary, he asserts that the exercise of that discretionary authority does not preclude judicial review. Citing both *Abbott Labs v. Gardner*, 387 U.S. 136, 140 (1967), and *Heckler v. Chaney*,

---

[2] The petitioner also advances an argument that the Secretary's refusal to allow a challenge to the appointment of the fiduciary amounts to a due process violation. We do not reach that issue here because, as discussed below, the statutes and caselaw are dispositive in this case. *See Bucklinger v. Brown*, 5 Vet.App. 435, 441 (1993) ("It is ' [a] fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" quoting *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439, 445 (1998).).

470 U.S. 821, 830 (1985), the petitioner asserts that judicial review is favored unless there is clear statutory language precluding it. The petitioner acknowledges that, in some rare instances, the statutory discretion granted to the Secretary may be so broad that there will be no standard by which to review his decisions, thereby prohibiting judicial review. However, as noted above, he contends that sections 5502 and 5507, as well as the regulations that implement those statutes, provide law that can be applied by the Court in reviewing the Secretary's decision to appoint a particular fiduciary.

### B. Amicus's Arguments

The amicus argues that the Secretary is estopped from arguing that this Court does not have jurisdiction over this matter because the Secretary, in contesting the jurisdiction of other courts to review decisions affecting the appointment of veterans' fiduciaries, has asserted that the U.S. Court of Appeals for Veterans Claims has jurisdiction to review the Secretary's actions in appointing a fiduciary. In support of this argument the amicus cites to several federal district court cases where, it asserts, the Secretary has advanced an argument in direct conflict with his position in the petition now before this Court. *See Judkins v. Veterans Administration*, 415 F. Supp. 2d 613, 617-18 (E.D.N.C. 2005); *Whitmere v. U.S. Veterans Administration* 661 F. Supp. 720 (W.D. Wash. 1986); *Carney v. G.I. Jane,* 2005 WL 2277490 (S.D. Tex. Sept. 16, 2005). In addition, the supplemental information filed by amicus and the petitioner was submitted in furtherance of this argument.

However, we observe that, as the matter before us is a question of this Court's jurisdiction, an assertion made by a party in another court that exclusive jurisdiction is reposed in this Court, even if expressly made, may not confer jurisdiction upon this Court. This Court derives its jurisdiction from statute. Thus, the amicus's argument regarding the Secretary's litigating position, while perhaps enlightening or even troubling, cannot impact the outcome of the question of our own jurisdiction. *See Heath v. West*, 11 Vet.App. 400, 402 (1998) (holding that the Court always has a right and an obligation to examine its own jurisdiction).

In response to the Court's questions in its November 23, 2010, order, the amicus substantially agrees with the positions taken by the petitioner. It asserts that the appointment of a federal fiduciary is a matter that affects the provision of benefits under section 511(a) and is therefore subject to review at the Board and, consequently, to appeal to this Court.

4

C. Secretary's Arguments

The Secretary makes two primary arguments. First, he contends that this case is controlled by *Willis v. Brown*, 6 Vet.App. 433 (1994). He asserts that the *Willis* decision has been applied by a long line of cases standing for the proposition that this Court is without jurisdiction to review the Secretary's appointment of a fiduciary for an incompetent veteran-beneficiary. He further asserts that *Willis* was not affected by the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Bates v. Nicholson*, 398 F.3d 1355 (Fed. Cir 2005). Second, the Secretary asserts that even if judicial review is not precluded, there can be no review if the statute in question has no meaningful standard against which to judge the agency's exercise of discretion, citing *Chaney*, *supra*. The Secretary concedes that section 5502 does not specifically prohibit judicial review and does affect the provision of benefits as described in section 511(a).

## IV. ANALYSIS

As an initial matter, the Court notes that VA's competency determination is not at issue. A VA fiduciary will be appointed if a beneficiary is determined to be incompetent to handle VA benefits to which he is entitled. In the instant case, the petitioner does not contest VA's determination that he is incompetent to handle VA funds. Petitioner's Memorandum of Law at 6. The Court observes that VA's competency determination only extends to a veteran's ability to handle VA benefits to which he is entitled. 38 C.F.R. § 3.353(b)(1) (stating that the rating agency has authority to determine competency for purposes of insurance and disbursement of benefits). The competency determination does not extend to the petitioner's ability to act on his own behalf in this Court nor in administrative proceedings before VA. As the petitioner does not challenge VA's competency determination and that determination has no impact on his standing in this Court, the propriety of VA's competency determination is not before this Court and does not warrant further discussion.

### A. Standard for the Issuance of the Writ

This Court has authority to issue extraordinary writs in aid of its jurisdiction, or potential jurisdiction, pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998). However, "[t]he remedy of mandamus is a drastic one, to be invoked only

5

in extraordinary situations." *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976); *see also Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed. Cir. 2002) ("'[E]xtraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial.'" (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953))). Before the Court may issue a writ, three conditions must be satisfied: (1) The petitioner must demonstrate that he lacks adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for the appeals process; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that the issuance of the writ is warranted. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004). The propriety of a writ of mandamus here turns on the question of whether we would have jurisdiction to review the Secretary's decision to appoint a particular individual as a fiduciary to receive and apply VA benefits on behalf of a veteran-beneficiary.

B. Statutory and Regulatory Framework for Appointment of a Fiduciary

The Secretary derives his authority to appoint fiduciaries from 38 U.S.C. § 5502.

> Where it appears to the Secretary that the interest of the beneficiary would be served thereby, payment of benefits under any law administered by the Secretary may be made directly to the beneficiary or to a relative or some other fiduciary for the use and benefit of the beneficiary, regardless of any legal disability on the part of the beneficiary. Where, in the opinion of the Secretary, any fiduciary receiving funds on behalf of a Department beneficiary is acting in such a number of cases as to make it impracticable to conserve properly the estates or to supervise the persons of the beneficiaries, the Secretary may refuse to make future payments in such cases as the Secretary may deem proper.

38 U.S.C. §5502(a)(1). The statute authorizes the Secretary to appoint a fiduciary when "it appears to the Secretary that the interest of the beneficiary would be served [by the appointment of a fiduciary]." *Id*. The Secretary is thus authorized to make the determination as to whether a fiduciary is necessary and, if he so determines, to act upon that determination. While section 5502 is a basic grant of authority allowing the Secretary to appoint fiduciaries, other statutes and regulations determine the individuals or entities qualified to act as fiduciaries and outline the process the Secretary must follow when appointing a fiduciary.

Section 5507 contains standards for the Secretary to follow when certifying an individual as

6

a qualified fiduciary:

> (a)  Any certification of a person for payment of benefits of a beneficiary to that person as such beneficiary's fiduciary under section 5502 of this title shall be made on the basis of--
>> (1) an inquiry or investigation by the Secretary of the fitness of that person to serve as fiduciary for that beneficiary, such inquiry or investigation--
>>> (A) to be conducted in advance of such certification;
>>> (B) to the extent practicable, to include a face-to-face interview with such person; and
>>> (C) to the extent practicable, to include a copy of a credit report for such person issued within one year of the date of the proposed appointment;
>> (2) adequate evidence that certification of that person as fiduciary for that beneficiary is in the interest of such beneficiary (as determined by the Secretary under regulations); and
>> (3) the furnishing of any bond that may be required by the Secretary.
>
> (b) As part of any inquiry or investigation of any person under subsection (a), the Secretary shall request information concerning whether that person has been convicted of any offense under Federal or State law which resulted in imprisonment for more than one year. If that person has been convicted of such an offense, the Secretary may certify the person as a fiduciary only if the Secretary finds that the person is an appropriate person to act as fiduciary for the beneficiary concerned under the circumstances.

38 U.S.C. § 5507 (a)-(b).   Specifically, the Secretary is required to perform an inquiry or investigation into the fitness of an individual before that individual may be certified to serve as a fiduciary. "[T]o the extent practicable," the Secretary is required to hold a face-to-face interview with the potential fiduciary, and to perform a credit check on the potential fiduciary.  38 U.S.C. § 5507 (a)(1)(B), (C).  In all instances, the Secretary is required to conduct a criminal background inquiry on the potential fiduciary.  Also, the statute requires that adequate evidence be presented which shows that the certification of a particular individual as a particular beneficiary's fiduciary is in the interest of that beneficiary.

Thus, the statute acknowledges that a showing must be made that certification of a certain individual to handle the beneficiary's funds is "in the interest" of the beneficiary.  Further, section 5507 allows the Secretary to expedite the process of certifying a fiduciary in certain identified cases, including where the individual under consideration for fiduciary certification is the parent of a minor beneficiary, the spouse or parent of an incompetent beneficiary, or a person who has been appointed

an incompetent beneficiary's fiduciary by a court of competent jurisdiction. 38 U.S.C. § 5507(c). These exceptions show that the Secretary is not only required to take the beneficiary's interests into account, but that there is also an expedited process or a preference for certain individuals with a close relationship to the beneficiary. While section 5507 states these specific requirements, it also specifies that the Secretary may promulgate further requirements in regulation. 38 U.S.C. 5507(a)(2).

The Secretary has promulgated 38 C.F.R. §§ 13.55 and 13.58, inter alia, to guide his own decision-making process in this area. Pursuant § 13.55, the Secretary has delegated his authority to appoint fiduciaries to the Veterans Service Center Manager (VSCM) at each regional office; § 13.55 also provides a list of persons who are eligible to serve as fiduciaries. Under § 13.55 the VSCM can make determinations as to the person who will be appointed legal custodian of a beneficiary to receive and apply VA benefit payments "for the best interests of the beneficiary." 38 C.F.R. § 13.58(b)(2)(i). This regulation specifically states that, "[i]n absence of special circumstances, the person or legal entity to be appointed legal custodian will be the person or legal entity caring for and/or having custody of the beneficiary or the beneficiary's estate." 38 C.F.R. § 13.58(a).[3]

The Secretary's adjudication manual provides further guidance for his personnel in the field as to which individual or entity to appoint as a fiduciary. The M21-1MR contains 22 pages specifically describing the process to be followed when appointing a fiduciary. M21-1MR, Part XI, Chapter 2, Section E, 1-23. This section of the manual includes a list of standards to be adhered to when making the determination (2-E-12), and also contains a specific statement that paid fiduciaries should only be appointed when there is no qualified fiduciary willing to serve without compensation (2-E-20). The extant statutory and regulatory framework provides authority and guidance for the Secretary in the appointment of a fiduciary. On the record before the Court, the only documentation concerning the process VA used to select Ms. Horace as the paid fiduciary for Mr. Freeman is a single e-mail and a VA report dated February 8, 2010.[4] A 3% commission, to be paid out of the

_____

[3]While not necessary to the Court's decision concerning this petition, there is some evidence that the veteran has been cared for and supported by his father and his sister for all or portions of the last 30 years.

[4]On April 5, 2010, VA e-mailed its response to Congressman Sam Johnson's office after he inquired into this matter at the request of the veteran. The text of the e-mail stated:
Why sister [sic] not appointed fiduciary:

petitioner's benefits, was authorized for Ms. Horace's services.[5]  The report concluded that "[t]he veteran has no family or friends who are able to serve as payee in this case."  Petitioner's December 20, 2011, Memorandum of Law Exhibit B.

## C.  Reviewability

The Secretary asserts that his execution of the obligation to select a fiduciary is not reviewable by this Court, or by any court.  Secretary's January 19, 2011, Memorandum of Law at 10-11.  We disagree.

### *1.* Willis *Not Controlling*

In support of his position, the Secretary makes the assertion that our opinion in *Willis* is controlling in this matter.  However, *Willis* was not a case that dealt with the Secretary's appointment of a fiduciary.  The appellant in *Willis* was one of the veteran's daughters who had been appointed conservator for her father, the veteran, by a state court during the last years of his life.  More than a year before the state court appointed her conservator, the Secretary had named another person to act as fiduciary for the veteran for purposes of ensuring that VA disability compensation payments to which he was entitled were used for lawful purposes and for his benefit.  6 Vet.App. at 434.  After

---

- The VA Field Examiner made the decision based on the fact of the large retroactive payment
- Shelia Horace is a bonded fiduciary and will be able to garner the necessary estate protection
- Sister - at the time of the field exam was unemployed and none of the other family members could offer the necessary estate protection to qualify as fiduciary.
- Shelia Horace is a paid fiduciary

Petitioner's December 20, 2011, Memorandum of Law Exhibit L.  The petitioner also attached a VA report dated February 8, 2010, labeled Exhibit B, to his Memorandum of Law.  This report stated that the petitioner's sister was currently unemployed, his father disabled, and his brother-in-law had limited income and protection will be required due to the size of the veteran's assets.  The report further stated: "Appointing a Paid Federal Fiduciary as legal custodian appears to be the most logical choice and least restrictive method available."  No further statement was made as to why any of these individuals were not fit to serve as the petitioner's fiduciary.  As to Shelia Horace, the report stated that she is "a recognized Paid Federal Fiduciary  and has served in this capacity for several years in a satisfactory manner."  The report noted that no character witnesses were obtained and no credit report was obtained, both based on her "prior dealings with VARO Waco."

[5] The Court notes that, although the record does not reveal the amount of disability compensation payments that the petitioner currently receives each month, the most recent rate tables published by VA indicate that a veteran without dependents who is deemed to be 100% disabled is entitled to monthly compensation in the amount of $2,673. *Veterans Compensation Benefits Rate Tables* (effective Dec. 1, 2009), http://www.vba.va.gov/bln/21/Rates/comp01.htm#FNB (last visited Mar. 22, 2011).  Thus, assuming this is the current amount of monthly compensation received by the petitioner, he is entitled to $32,076 per year, and Ms. Horace's commission for her services would be $962.28 annually.  Further, the petitioner was awarded a large retroactive payment when he was granted benefits.  The Court has not been provided with any information as to whether Ms. Horace would receive a 3% commission from that award.

the veteran's death, the conservator (the veteran's daughter) sought fees from the deceased veteran's VA benefits in order to cover costs she had incurred in her role as the state-designated conservator. Accordingly, the appellant was not seeking to be named fiduciary or challenging the earlier VA appointment of a fiduciary, but rather sought payment of funds to cover expenses previously incurred in her role as state-appointed conservator for her father, the veteran.

After filing a claim with VA seeking such funds from the deceased veteran's benefit account, which was denied by the RO, the conservator appealed to the Board. The Board rendered a decision denying the conservator's claim, and the conservator appealed to the Court. The Court affirmed the Board's decision that divided the veteran's remaining benefits equally between the conservator-daughter and the veteran's other surviving daughter. The Court noted that "the sole issue on appeal is whether the [conservator-daughter] is entitled to conservatorship fees." *Id.* at 435. The Court observed that the conservator's claim raised "the concurrent issue of whether particular VA appointments of fiduciaries are reviewable by this Court . . . ." *Id.* The Court then discussed the Secretary's equitable powers under 38 U.S.C. § 503 as an example of discretion not subject to judicial review, citing *Darrow v. Derwinski*, 2 Vet.App. 303 (1992), and then, somewhat ambiguously, added "or, as here, the appointment of a fiduciary." *Willis*, 6 Vet.App. at 436. The panel in *Willis* then went on to note that, in the case before it, (1) the Secretary appointed the VA fiduciary five years before the veteran's death, (2) since the claim for compensation brought by the conservator-daughter for her services as a court-appointed conservator arose only after the veteran's death, the fiduciary appointment decision by the Secretary was not a matter for redetermination at the RO level or at the Board, and, thus, (3) the Court had no jurisdiction to review the appointment "as that question was not for Board decision." *Id*.

On review today, it is not clear to the Court whether the *Willis* panel was observing that the VA decision to name a fiduciary was categorically beyond the jurisdiction of the Court or, in the alternative, that on the facts therein, the time to contest the selection of the VA fiduciary had long passed without objection or NOD. What is clear, however, is that to the extent that the panel commented on the Court's jurisdiction to review the appointment of a VA fiduciary, its discussion was dicta because it was not necessary to the Court's decision to affirm the Board's denial of conservatorship fees.

10

In *Darrow*, which was cited in *Willis*, this Court distinguished its power to review decisions of the Secretary based upon equitable relief from those involving his authority to award benefits based upon a statutory scheme composed of specific elements. *Darrow,* 2 Vet.App. at 304. That case dealt specifically with matters under the Secretary's equitable powers, codified in section 503(a). In *Darrow*, the Secretary had granted equitable relief to the appellant in the amount of a 70% disability rating. The appellant disagreed with that rating and sought to have the rating increased to 100%. The Court held that the grant of benefits under the Secretary's equitable authority was distinct from a grant of benefits based upon statutory entitlement. The Secretary is authorized to exercise his discretion to award benefits if he believes that such benefits were improperly withheld due to administrative error. 38 U.S.C. § 503(a). The Court noted that the authority to grant benefits on the basis of equity was given to the Secretary personally and had not been delegated. *Darrow*, 2 Vet.App. at 305. The Court noted that section 7104(a), which defines the jurisdiction of the Board, confined review "to '[a]ll questions in a matter . . . under section 511(a).'" *Id.* (quoting 38 U.S.C. § 7104(a)). Thus, the Court in *Darrow* acknowledged that the authority to grant equitable relief had been given to the Secretary and it was not possible for the Court to review the Secretary's determination of whether or not to exercise that authority.

The Court further notes that *Willis* distinguished itself from *Darrow*. While *Willis* noted that *Darrow* placed the Secretary's equitable powers outside its jurisdiction, the Court's short, concluding discussion delineates a distinction between *Willis* and *Darrow*. *Willis*, 6 Vet.App at 436. In *Darrow*, the matter of the Secretary's exercise of his equitable powers was the primary issue. The appellant filed an NOD with the Secretary's decisions, a Statement of the Case was issued, the matter was appealed to the Board, and the Board decision was then appealed to this Court. Conversely, in *Willis,* the Court noted both that the matter of selection of a VA fiduciary was never raised and that the time to file an NOD with the fiduciary determination had long since passed. Thus, the fiduciary determination was never considered for redetermination at the RO or the Board. *Id.* In this manner, *Willis* acknowledged that it did not reach the question of whether the selection of a fiduciary was subject to Board review if it was timely appealed. Consequently, *Willis* cannot be considered

11

precedential authority on this issue.[6]

## 2. Bates *Provides Precedential Guidance*

While our decision in *Willis* is not dispositive of the matter at hand, the Federal Circuit's discussion in *Bates v. Nicholson*, 398 F.3d 1355 (Fed. Cir. 2005), does provide precedential guidance. The Federal Circuit's analysis in *Bates*, concerning the Veterans Act of 1936, ch. 867, 49 Stat. 2031, supports our conclusion that administrative actions undertaken pursuant to section 5502 are subject to this Court's jurisdiction through application of 38 U.S.C. §§ 511(a) and 7104. In *Bates*, the Federal Circuit held that a determination of whether or not to terminate the certification of an attorney to practice before VA was a matter that arose "under a law that affects the provision of benefits." 398 F.3d at 1361. The Federal Circuit determined that the word "law" in section 511(a) refers to any "single statutory enactment that bears a Public Law number in the Statutes at Large." *Id.* In the case before us, section 5502, as conceded by the Secretary, is a matter affecting benefits under section 511(a).[7] *Bates* did not expand this Court's jurisdiction, but rather the Federal Circuit reiterated the reach of the Board's jurisdiction over any matters that affect the provision of benefits. Thus, the Court is compelled by *Bates* and its broad definition of the word "law" to exercise jurisdiction over any matter decided by the Board that falls within the purview of section 511(a). Further, under the holding of *Bates*, the Secretary is compelled to recognize an NOD concerning a VSCM selection of a VA fiduciary.

All parties acknowledge that section 5502 is the operative statute that grants the Secretary the authority to appoint fiduciaries. Secretary's Response to the Petition at 4; Petitioner's Memorandum of Law at 17. Further, all parties acknowledge that section 5502 is a law that affects the provision of benefits. Secretary's Memorandum of Law at 10; Petitioner's Memorandum of Law at 17. As the Court concurs in this assessment, we also acknowledge that *Bates* affirms that any law

---

[6]We recognize that non-precedential decisions of this Court may have relied on *Willis* as precedent concerning review of the Secretary's exercise of discretion to appoint fiduciaries. However, as those decisions do not form binding precedent of this Court and *Willis* does not control this issue, we write for the first time with precedential authority on this issue. As a result of this circumstance, it is best said that we write not on a clean slate, but on a new one, attempting to erase some of the non-precedential clutter that had accumulated with age.

[7]The Court notes that the concurrence in *Bates* favored a narrower definition of the word "law." *Bates*, 398 F.3d at 1366 (Bryson, J., concurring in the result). We observe that the matter before the Court would also fit into the concurrence's more narrow definition.

that affects the provision of benefits is contemplated by section 511(a), even in the face of the Secretary's argument that a matter is committed to his discretion. Section 7104 states that any matter that under section 511(a) is subject to a decision of the Secretary is subject to one review on appeal to the Secretary. 38 U.S.C. § 7104(a); *see Disabled American Veterans v. Secretary of Veterans Affairs*, 327 F.3d 1339 (Fed. Cir. 2003). Thus, section 5502 cannot be interpreted as precluding a veteran from challenging the appointment of a fiduciary. Accordingly, if the veteran disagrees with the Secretary's manner of selecting a fiduciary, the veteran may appeal that decision to the Board. Section 7252 grants this Court exclusive jurisdiction to review decisions of the Board. 38 U.S.C. § 7252. Thus, the statutory framework confirms this Court's ultimate jurisdiction over a decision made by the Secretary pursuant to section 5502.

### 3. No Applicable Exception to Presumption of Judicial Review

While the statutory framework gives the Board, and thus this Court, jurisdiction to review matters decided pursuant to section 5502, the Secretary contends that this Court lacks jurisdiction because the statutes related to the appointment of fiduciaries commit such decisions to the sole discretion of the Secretary and provide no judicially reviewable standards. As outlined above and further discussed below, the Court disagrees and concludes that the statutory framework concerning appointment of VA fiduciaries presents no such impediment to our jurisdiction.

### a. No Exclusive Grant of Jurisdiction

The Supreme Court has made clear that there is a strong presumption of judicial review over agency determinations. In the matter of *Kucana v. Holder*, the Supreme Court noted once again that there is "the 'presumption favoring interpretations of statutes [to] allow judicial review of administrative action.'" 130 S.Ct. 827, 831 (2010) (quoting *Reno v. Catholic School Services, Inc.*, 509 U.S. 43, 63-64 (1993)). At issue in *Kucana* was the ability of the courts to review a decision made by the Attorney General when the decision in question had been placed within the Attorney General's discretion by statute. The Supreme Court found that the matter was subject to judicial review. In support of this finding, the Supreme Court specifically stated that if Congress wished to erect a bar to judicial review, then it could easily do so with specific language to that effect. *Id.* at 837. Further, the Supreme Court determined that if a statute's bar to judicial review was subject to reasonably divergent interpretation, the statute should be read to favor the "'traditional

13

understandings and basic principle[]: that executive determinations generally are subject to judicial review.'" *Id.* at 839 (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995).

The Supreme Court also articulated this presumption in favor of judicial review in its decision in *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.* 469 U.S. 189 (1985). In that decision, the Court stated:

> No matter how dedicated and how competent administrators may be, the possibility of error is always present, especially in nonadversary proceedings. For that reason the Court normally assumes that Congress intended agency action to be subject to judicial review unless the contrary intent is expressed in clear and unambiguous language.

*Id.* at 212. Thus, the Supreme Court has made clear that, unless Congress *explicitly* prohibits it, there is a strong presumption in favor of judicial review. This point is perhaps particularly pertinent in the context of appeals to this Court, given that the driving principle that led Congress to create the Court was a desire to ensure fairness in the adjudication of veterans benefits claims by providing the additional safeguard of judicial review of agency decision-making. *See generally American Legion v. Nicholson*, 21 Vet.App. 1, 5 (2007) (summarizing statements of Senator Alan Cranston in support of the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988), which created the Court). With this in mind, we turn to examine the Secretary's statutory grant of authority to appoint fiduciaries.

As discussed above, the Secretary's grant of authority to appoint fiduciaries over veterans' funds derives from section 5502(a). That provision does not contain an explicit bar to judicial review. Other provisions of section 5502 contain language that indicates that the Secretary has "discretion" over acts involving suspected improper acts by a fiduciary; however, Congress did not use the word "discretion" when describing the Secretary's authority to appoint a fiduciary under section 5502(a). The Court adopts the Supreme Court's observation from *Kucana*, that, had Congress wished to bar this Court's jurisdiction, it could have easily done so. *See, e.g.,* 38 U.S.C. § 7252(b)("The Court may not review the schedule of ratings for disabilities . . . ."). As Congress chose not to specifically bar this Court's jurisdiction, and established a statutory framework that includes the appointment of fiduciaries within the Board's and, thus, this Court's statutory grant of jurisdiction (*see* Section C.1 *supra*), we hold that the use of permissive words such as "may" and

"appears to the Secretary" do not constitute language precluding the Secretary's determination regarding the appointment of a fiduciary from being appealed to the Board and ultimately to this Court.

Further, Congress had ample opportunity to exclude section 5502 from this Court's jurisdiction. Section 511 was previously codified as 38 U.S.C. § 211. *See* Pub.L 102-83, 105 Stat. 388 (recodifying section 211 as section 511 without any substantive changes). Prior to the passage of the Veterans Judicial Review Act of 1988 (VJRA), PL 100-687, 102 Stat. 4105, section 211 gave the Secretary broad discretionary powers that were unreviewable by any court. Passage of the VJRA not only created this Court, but also provided a number of exceptions to the Secretary's exclusive authority. *See* 38 U.S.C. § 511(b).

Rather than completely rewriting section 211, Congress chose to retain the broad language barring review of Secretarial decisions but added significant exceptions in section 511(b). There, it added an exception for judicial review by the Federal Circuit of the Secretary's use of his rulemaking authority. It also specifically provided for review of matters under 38 U.S.C. §§ 1975 and 1984, matters governed by chapter 37 of title 38, and matters covered by chapter 72 of title 38, which established this Court.[8] Section 7104 subjected decisions of the Secretary made pursuant to section 511(a) to review by the Board and subsequently this Court. The intricate construction of this statutory structure illustrates the congressional intent to exclude certain decisions from judicial review but include others. Congress gave the Board broad authority to review "[a]ll questions in a matter . . . under section 511(a) . . . subject to decision by the Secretary." 38 U.S.C. § 7104. Section 5502 is a matter governed by 511(a), as conceded by the Secretary, and not excluded from judicial review. We therefore conclude that section 5502 falls within the congressional grant of jurisdiction given to the Board and to this Court in the VJRA.

### b. Existence of Judicially Reviewable Standards

Nevertheless, the Secretary has argued that there are no standards for the appointment of a fiduciary that are capable of judicial review. While the Secretary cites to *Chaney* to support this

---

[8]A further example of a Congressional determination to specifically exempt certain matters from this Court's jurisdiction can be found in 38 U.S.C. §7252(b), which clearly states that the Court may not review schedular ratings under § 1155.

15

position, his reliance on that case is misplaced. In *Chaney*, a group of prison inmates brought suit against the Secretary of Health and Human Services (HHS) seeking to compel the Food and Drug Administration (FDA) to take enforcement action with respect to the drugs administered for lethal injections. The Supreme Court ruled in favor of the HHS Secretary, stating that "even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 830.

However, in *Chaney,* the agency had made a determination *not* to take action. The Supreme Court's opinion indicated that there were no judicially reviewable standards that would allow a court to determine whether the agency was required to take action. The Supreme Court's decision indicates that when an agency has been given discretionary authority, it cannot be compelled to exercise that authority unless there are sufficient standards to govern when the authority must be exercised. Thus, *Chaney* is distinguishable from the issue presented here. Unlike the situation addressed in *Chaney*, here the Secretary did exercise his authority to appoint a fiduciary.

In further discussion of the action vs. inaction distinction, the Supreme Court cited to *Dunlop v. Bachowski*, 421 U.S. 560 (1975). In *Dunlop*, the Court determined that an agency could be compelled to take action when its statutory grant of authority explicitly compelled the agency to take action in a specific set of circumstances. The Court in *Chaney* distinguished the facts of that case from those in *Dunlop* on the basis of the clarity of the standards that determined whether or not an agency was required to take action. Similarly, we distinguish the present matter from *Chaney* on the basis that *Chaney* involved an effort to compel an agency to act and the present matter involves review of an agency's action, once undertaken. *See also Smith v. Derwinski*, 1 Vet.App. 267, 278-79 (1991) (holding that a Board determination as to whether a veteran is entitled, in "equity and good conscience," to waiver of indebtedness under 38 U.S.C. § 5302, is a discretionary one but that review of such waiver decisions by this Court is still possible to determine whether the Board abused such discretion.).

In the case before us, the Secretary determined that a fiduciary was necessary. In the course of the appointment of a fiduciary, the Secretary's delegated authority was exercised to appoint an individual other than the petitioner's sister to handle the petitioner's VA benefits. As discussed

16

above, statutory and regulatory provisions exist that govern the process the Secretary must follow when appointing a fiduciary. *See* Section IV.B. *supra*. As Congress did not place that statutory framework beyond either the Board's or this Court's jurisdiction, a beneficiary may challenge whether or not the Secretary properly exercised his authority in this area. Such a beneficiary would be entitled to one review on appeal within VA and, subsequently, an appeal to this Court.

## V. CONCLUSION

The Court concludes that all conditions that must be met prior to the issuance of a writ have been satisfied. In reaching this conclusion, the Court observes that the Federal Circuit's decision in *Bates* helped clarify the breadth of the Board's jurisdiction. Specifically, any provision contemplated by section 511(a) is subject to one review on appeal by the Secretary and that Secretarial review is explicitly delegated to the Board. As all parties agree that the statutory framework authorizing the Secretary to appoint a fiduciary to handle VA benefits for an incompetent veteran falls within the purview of section 511(a), the Court concludes that the petitioner is clearly and indisputably entitled to appeal to the Board the decision of the VSCM to appoint a paid federal fiduciary.[9]

As the petitioner has shown, and the Secretary has conceded, that without the Court's intervention in the form of extraordinary relief, the petitioner will not be allowed to pursue his claim to the Board, the Court is left with the clear understanding that the issuance of a writ of mandamus is necessary to protect its potential jurisdiction over this matter. If the petitioner does ultimately

---

[9]The Court notes that the named fiduciary was authorized by the VSCM to compensation in the amount of 3% of the veteran's entitled benefits. Petitioner's December 20, 2010, Memorandum of Law Exhibit B. There is no assertion that the veteran's sister seeks compensation for service as a fiduciary. *See* 38 C.F.R. § 13.64( c)("Commissions may not be authorized to . . . close relatives acting in fiduciary capacity on behalf of the beneficiary, except under extraordinary circumstances."). While not necessary to our decision at this juncture, a property right of the veteran is clearly potentially affected by any payment from his benefits to a fiduciary.

The potential breadth of the impact of VA's federal fiduciary program on this property right is expansive. On March 17, 2011, Michael Walcoff, Acting Under Secretary for Benefits, testified before the House Veterans' Affairs Subcommittee on Disability Assistance and Memorial Affairs and stated that VA's fiduciary program manages the estates of 110,000 veterans with a total net worth of $3.2 billion. *See* Statement of Michael Wolcoff, March 17, 2011, available at http://veterans.house.gov/hearings/Testimony.aspx?TID=4423&Newsid=2291&Name=MichaelWolcoff (last visited April 26, 2011). If all of these veterans had paid fiduciaries authorized to collect 3% of their benefits, as in the present case, this would amount to $96 million in fiduciary fees. In fact, the Court notes that the maximum commission VA is authorized to award a paid federal fiduciary is 4% of the yearly benefits to which the veteran is entitled. 38 U.S.C. § 5502(a)(2).

perfect an appeal to the Board, he will be entitled to a full explanation, in light of the statutory and regulatory provisions outlined in this order, of the reasons or bases for the Board's decision. 38 U.S.C. § 7104(d)(1).

To further clarify, because the Court concludes that the provisions of sections 5502 and 5507, as well as the regulations that implement those statutes, provide legally meaningful standards by which to evaluate the appointment of a fiduciary, the petitioner would then be entitled to further appeal any final adverse Board decision on this matter to the Court.

Accordingly, upon consideration of the foregoing, it is hereby

ORDERED that the February 16 and 18, 2011, motions to supplement filed by amicus and the petitioner are granted. It is further

ORDERED that the March 7, 2011, motion to supplement filed by the petitioner is denied. It is further

ORDERED that the Secretary issue a Statement of the Case based upon the petitioner's December 22, 2009, Notice of Disagreement concerning the appointment of a federal fiduciary. Upon perfection of the petitioner's appeal, the Secretary will certify the petitioner's appeal to the Board.

DATED: April 26, 2011                                    PER CURIAM.

LANCE, *Judge*, concurring: While I fully agree with the opinion in this case, I write separately simply to note that the majority of VA regulations concerning fiduciary appointments are from 1975 and the Secretary may wish to update these regulations to provide better guidance to regional offices and to the Board on review of their decisions. While this case does not present the ideal fact pattern, it is important to note that VA regulations do not cover the situation where a durable power of attorney–one that is statutorily authorized under state law and signed when the veteran is competent–is in place. The regulations also fail to address the circumstance where a court having jurisdiction in the veteran's domicile has established a conservatorship for the veteran, an incapacitated person. These court proceedings are comprehensive and all interested parties have a right to be represented and heard during the proceedings. Many jurisdictions require an annual

18

accounting by the conservator and may require a bond. It would seem that in the circumstance where such a sophisticated structure is employed and a conservatorship established, it would be unnecessary for VA to use its resources to involve itself in a separate agency action. It should be the welfare of the veteran and conservation of his/her assets that controls, not the source of the veteran's income or payments. VA benefits may well be a minor portion of an overall estate. In such a case, it seems unnecessarily burdensome to establish a separate "trusteeship" and charge the veteran up to 4% of his/her benefits for a trustee that may not be desired, wanted, or needed.

While the regulations, 38 C.F.R. §§ 13.55 and 13.58, were drafted after the Uniform Probate Code (UPC) was enacted in 1969, they were drafted before the UPC was widely adopted and these regulations have not been amended since they were adopted in 1975. Article V, Part 5, of the UPC concerns durable powers of attorney. The UPC is now widely adopted and many states, if not most, now recognize statutory durable powers of attorney wherein the authority granted survives the incompetence of the grantor. The Durable Power of Attorney Act has also been adopted by most states. Under a durable power of attorney, the grantor (veteran) would have selected his or her attorney-in-fact to act on his or her behalf. That desire should, in my opinion, be given deference in the absence of fraud, proven misfeasance, or malfeasance or the death or incompetence of the attorney-in-fact.

By way of comparison, I would highlight the more sophisticated structure for the appointment of a fiduciary that is in place within the Social Security Administration (SSA). SSA, unlike VA, has an order of preference in selecting a payee, 20 C.F.R. § 404.2021 (2010), and a list of considerations to be taken into account when selecting a payee, 20 C.F.R. § 404.2020 (2010). In its order of preferences, SSA lists the "legal guardian . . . who has custody of the beneficiary" as its first preference. 20 C.F.R. § 404.2021 (a)(1). Two of the considerations to be taken into account are "[a]ny legal authority the person, agency, organization, or institution has to act on behalf of the beneficiary," 20 C.F.R. § 404.2020(c), and "[w]hether the potential payee has custody of the beneficiary," 20 C.F.R. § 404.2020(d). The SSA recognizes legal relationships in its regulations and the more detailed structure that is in place within the SSA regulations helps to ensure that the beneficiary's best interests are actually served.

Regardless of what the Secretary decides to do, it would benefit the system for VA to

explicitly address the relationships that are recognized elsewhere, thereby saving the veteran up to 4% of his or her benefits that is customarily charged by the VA-appointed fiduciary. In general, veterans will be better served if their funds– regardless of the source– are managed by a single individual who can manage them intelligently based upon a real familiarity with the veteran's situation and needs.