# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-0552

JOE A. BROWDER, JR., PETITIONER,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before DAVIS, *Chief Judge*, and SCHOELEN and PIETSCH, *Judges.*

## O R D E R

On August 30, 2017, the petitioner, Joe A. Browder, Jr., filed through counsel an amended petition for extraordinary relief in the form of a writ of mandamus.[1] The petitioner asked the Court to compel the Secretary to allow him to appeal to the Board of Veterans' Appeals (Board) agency decisions declining to investigate his allegations that a VA-appointed fiduciary misused the benefits that VA asked him to administer.

The Court formed a panel to address whether a decision by the Secretary not to formally investigate a misuse allegation may be appealed to the Board and eventually the Court. *See FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (the power to issue writs "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected"); *Cox v. West*, 149 F.3d 1360, 1364 (Fed. Cir. 1998). As the Court will explain in detail below, actions recently taken by the Secretary have rendered the panel issue and the amended petition moot. The Court therefore will dismiss the petition.

## I. LEGAL AND PROCEDURAL BACKGROUND

Congress has defined misuse of benefits by a fiduciary and described the penalty that the Secretary should impose when he determines that a misuse has occurred. 38 U.S.C. § 6106. Congress, however, has not explained to the Secretary how he should respond when a veteran alleges or another source suggests that fiduciary misuse has occurred.[2]

The Secretary has not issued regulations addressing that matter. Instead, he has created, through "VA policy," a two-step process for responding to misuse allegations.[3] Secretary's May

---

[1] The petitioner filed his initial petition on February 27, 2017. He filed his amended petition after the Veterans Consortium Pro Bono Program helped him to obtain counsel. The Court thanks the Program for its efforts and petitioner's present counsel for his willingness to appear in this matter.

[2] In one of the many filings that the Secretary has submitted during the development of this case, he stated that "[i]nformation regarding fiduciary misuse of benefits can come from any source." Secretary's May 22, 2017, Response at 2.

[3] The Secretary has done little to formalize or publicize his policy. There is no information on VA's website explaining to veterans whom they should contact, what steps they should take, and what rights they have if they

22, 2017, Response at 2. First, an official at one of six VA fiduciary hubs reviews the allegations and decides "in [his or her] discretion" whether "there is evidence sufficient to warrant" a formal investigation and decision. *Id.* If that official answers in the affirmative, then a formal investigation begins. If not, the matter is closed.[4]

During the pendency of this case, the Secretary conceded that decisional reports issued after VA has conducted a formal misuse investigation are subject to appellate review before the Board and eventually the Court. *Id.* at 2-3 (citing *Freeman v. Shinseki*, 24 Vet.App. 404 (2011)). He has argued, however, that an agency decision not to formally investigate misuse allegations is wholly discretionary and not subject to appellate review.

More than a decade ago, the petitioner alleged that his VA-appointed fiduciary embezzled a portion of the benefits that he was responsible for administering. During the pendency of a petition that the petitioner filed in 2006, a VA official submitted an affidavit to the Court responding to the petitioner's allegations. Secretary's April 6, 2017, Response at Exhibit 1. In his affidavit, the official wrote that "[t]here is no evidence that [the petitioner's fiduciary] and/or the financial institutions involved embezzled any funds." *Id.* In October 2006, the petitioner sent VA an "amendment to my [S]ubstantive [A]ppeal and completed VA Form 9 of August 16, 2006," in which he reiterated his allegations. *Id.* at Exhibit 3.

In an October 2008 memorandum, a VA veterans service center manager wrote that "there is no need to investigate the allegation of misuse." *Id.* at Exhibit 5. According to the Secretary, in "May and July 2009, in conjunction with other matters that were then before the Board, [the] [p]etitioner submitted . . . a request for reimbursement for VA pension funds he asserted were stolen by his former fiduciary." *Id.* at 4.

On March 20, 2017, a VA legal instrument examiner and "fiduciary hub manager or designee" concluded that "there is no need to investigate the allegation of misuse." *Id.* at Exhibit 18. Soon thereafter, VA wrote to the petitioner that "[i]f you believe that other misuse and/or misconduct occurred, please submit any additional evidence for review." *Id.* at Exhibit 19.

Whether the 2006 affidavit constitutes an agency decision not to investigate the petitioner's misuse allegation remains in dispute. The Secretary has acknowledged, however, that the October 2008 memorandum and March 20, 2017, statement are decisions not to investigate that the petitioner challenged. Once again, it is his position that those are discretionary decisions that are not subject to appellate review. As noted in the opening paragraphs of this order, to ensure that its potential jurisdiction is protected in this matter, the Court formed a panel to decide whether that position is correct.

After the panel formed, the Secretary, pursuant to his responsibilities as set forth in *Solze v. Shinseki*, 26 Vet.App. 299 (2013), informed the Court that the fiduciary hub responsible for this case had reversed course, conducted a formal misuse investigation, and, on October 6, 2017, issued an investigation report to the petitioner. The Secretary also demonstrated that fiduciary hub

---

suspect that misuse has occurred. *See* www.benefits.va.gov/fiduciary (last visited November 9, 2017).

[4] The question whether this scheme is legal is not before the Court.

2

officials had informed the petitioner about his right to appeal the October 6, 2017, report to the Board. In subsequent filings, the parties have debated whether the Secretary's *Solze* submission moots the petition.

## II. ANALYSIS

This Court has, from its inception, adhered to the "case or controversy rubric" found in Article III of the United States Constitution. *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990). Consequently, a petition should be dismissed when "there is no longer a case or controversy for the Court to resolve." *Thomas v. Brown*, 9 Vet.App. 269, 270 (1996) (per curiam order); *see also Chandler v. Brown*, 10 Vet.App. 175, 178 (1997) (per curiam order). The classic example illustrating that rule is found in *Mokal*. In that case, the Court held that, because the petitioner sought a writ of mandamus to compel the Secretary to issue a Statement of the Case and the Secretary issued a Statement of the Case while the petition was pending, the "controversy surrounding this petition is moot . . . , the Court no longer has jurisdiction and the petition is dismissed." 1 Vet.App. at 15.

This case is not quite so straightforward. The petitioner asked the Court to compel the Secretary to "afford . . . his legal right to appeal to the Board . . . VA's decision that there was insufficient evidence of 'misuse of benefits' as defined under Section 6106 to warrant further investigation." Amended Petition at 1, 13. He has not received that specific relief. Instead, he received a formal misuse investigation report that can be appealed to the Board.

The fact that the petitioner has not received the exact relief that he requested makes no difference. The petition is moot. Had the Court agreed with the petitioner that he should be allowed to appeal agency decisions declining to investigate his misuse allegations to the Board, the most relief the Board could have provided to him would have been an order instructing the fiduciary hub to conduct a formal investigation. Because an investigation has been conducted, the petitioner will be able to take his case before the Board. The Court can discern no other relief that the petitioner would obtain if it ordered the Board to review the prior agency decisions. Consequently, it is not likely that a decision on the panel issue will redress the injury claimed in the amended petition for the very reason that the injury has already been redressed. That, of course, is the picture of mootness. *See INS v. Chadha*, 462 U.S. 919, 939 (1983) (a controversy exists where the outcome will have "real meaning").

The petitioner complains that by dismissing this petition, the Court will cause him to experience further delays. On the contrary, the petition process has done its job, and he will now obtain factual appellate review of his misuse allegations more quickly than under his proposed remedy.[5] Even if the panel had reached the issue that he asked it to resolve and ruled in his favor, he would have had to argue before the Board that he should be awarded a formal misuse investigation. That argument would perhaps then have been heard by this Court and the one above. If he did ultimately earn a formal investigation, it would have been at the expense of additional

---

[5] That is not to say that the delays that he has experienced so far are not significant and regrettable. They most certainly are.

litigation that lasted several years. The Secretary's action obviates the need for that additional effort. He has his formal investigation report in hand and may appeal at any time.

The petitioner also notes what he perceives to be the injustice both of what has occurred here and the Secretary's fiduciary policies in general. There is some merit to that point. The Secretary, for more than a decade, refused to formally investigate the petitioner's misuse allegations or allow him to bring them before the Board and ignored many of his arguments. Then, within months of learning that a precedential decision might upend his fiduciary investigation policies, the Secretary mooted the petition by sending out a formal misuse report that strained, filler and all, to reach two pages. It is not hard to see how the Secretary's actions could come across as cynical, and they are especially concerning given the "growing consensus outside VA that the fiduciary system is broken." *Solze*, 26 Vet.App. at 127 n. 13 (Lance, J., dissenting in part). However, given the individualized, particularized, case-specific, and fact-intensive nature of petitions and the jurisdictional purposes that they serve, it is not appropriate to issue a writ of mandamus for either punitive reasons or to protect the rights of veterans who are not a party in the present action. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004). For that reason and because the petitioner's arguments are moot, the important question raised by the initial and amended petitions must wait for another case on another day.[6]

Upon consideration of the foregoing, it is

ORDERED that the petitioner's petition is DISMISSED.

DATED:  December 12, 2017                                      PER CURIAM.

---

[6] The Secretary, of course, may review his policies without the Court prodding him to do so. The petitioner pleaded with VA officials several times over many years to allow him to bring his misuse allegations before the Board. Those officials not only failed to explain to him why he was not able to do so, they seemed on occasion not to know how to respond to his arguments. To the extent that the problems experienced by the petitioner are systemic, they are unacceptable and the Secretary would do well to take immediate corrective action.

4