# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-4698

KAREN R. SHORETTE, PETITIONER,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before BARTLEY, *Chief Judge*, and MEREDITH and LAURER, *Judges*.

**O R D E R**

On April 18, 2022, Karen R. Shorette, the petitioner and legal guardian of veteran Charles R. Shorette, who was then unrepresented, filed a Notice of Appeal (NOA) in a separate docket, which the Court later construed liberally as a petition for extraordinary relief in the form of a writ of mandamus.[1] She asks the Court to compel VA to issue a decision regarding her entitlement to be reinstated as representative payee for Mr. Shorette, address her complaints that his current fiduciary[2] is violating a July 2010 fiduciary agreement in which VA approved monthly expenses in excess of $3,000 to support the veteran's family, and release the withheld funds. Petition (Pet.) at 1-3;[3] *see* Oral Argument (OA) at 19:35-21:45, 22:14-23:05, http://www.uscourts.cavc.gov/oral _arguments_audio.php. Also pending before the Court is the petitioner's October 3, 2022, motion to enjoin VA from making "any changes, reductions, reallocations, etc. to the benefits of . . . [Mr.] Shorette, pending a final resolution of this [petition] or specific authorization from th[e C]ourt." Petitioner's Motion at 1.

This matter was submitted to a panel on November 17, 2022. After the petitioner obtained counsel, the Court ordered and received supplemental responses from the parties, and the Court held oral argument on May 9, 2023. For the following reasons, the Court will deny the petitioner's motion for an injunction, grant in part and dismiss in part the petitioner's request for extraordinary relief, and issue a writ of mandamus.

---

[1] The Court construed both the petitioner's NOA and her opposition to the Secretary's motion to dismiss in that docket as the petition. *See Shorette v. McDonough*, No. 22-2268, 2022 WL 3152354 (Vet. App. Aug. 8, 2022) (order). After the Court ordered the Secretary to respond to the petition, the Court received correspondence from the petitioner on August 28, 2022, in which she provided an abbreviated timeline of the events that led her to seek the Court's intervention. The Court will construe that document as a supplement to the petition and direct the Clerk of the Court (Clerk) to file it as such.

[2] VA defines a "fiduciary" as "an individual or entity appointed by VA to receive VA benefits on behalf of a beneficiary for the use and benefit of the beneficiary and the beneficiary's dependents." 38 C.F.R. § 13.20 (2023). At various times throughout this order, the Court uses the terms fiduciary, payee, representative payee, and spouse payee. For purposes of this order, the Court applies these terms interchangeably as generally referring to the individual receiving or alleging entitlement to receive and manage the veteran's VA benefits.

[3] Unless otherwise noted, the Court's references to the petitioner's filings before she retained current counsel refer to the overall pagination of the Portable Document Format document.

# I. BACKGROUND

Mr. Shorette served on active duty in the U.S. Air Force for 26 years, until he retired as a command chief master sergeant in 2001. Petitioner's Nov. 4, 2022, Reply, Attachment (Attach.) B at 18. At times relevant to this petition, the veteran had been awarded VA monthly compensation of approximately $3,500, which includes an additional allowance for one dependent—his spouse. *See* Secretary's Sept. 13, 2022, Response (Resp.), Attach. B.

In April 2008, VA admitted him to the Marion VA Medical Center (VAMC) with a diagnosis of primary progressive multiple sclerosis and dementia. *See* Supplemental (Supp.) Pet. at 1. Later that year, VA certified the petitioner as Mr. Shorette's spouse payee, *see* Secretary's Sept. 13, 2022, Resp., Attach. A, and in February 2009, she was granted letters of guardianship over the person and the estate of Charles R. Shorette from the Circuit Court of Grant County, Indiana, *see* Supp. Pet., Attach. 1 at 3.

The VAMC, in July 2010, informed the petitioner that Mr. Shorette was incapable of understanding and exercising his rights as a patient at the facility and that she may exercise those rights on his behalf. *Id.* at 4. Later that month, a VA regional office (RO) informed the petitioner that VA "will continue to recognize you as federal fiduciary to receive VA funds for [Mr.] Shorette" and that the funds "are to be used solely for his care, maintenance, and personal expenses and dependents recognized by" VA. *Id.* at 5; *see id.* at 5-10. This correspondence reflects that the petitioner had been authorized to make average monthly disbursements in the amount of $3,212.83, including a $100 allowance for Mr. Shorette at the VAMC and funds for his family's mortgage, utilities, vehicle, food, and insurance. *Id.* at 6.

Several years later, a psychologist at the VAMC where the veteran resides called the Indianapolis fiduciary hub and alleged that the petitioner had been misusing Mr. Shorette's funds. *See* Petitioner's Feb. 7, 2023, Resp., Exhibit (Ex.) G. VA suspended the veteran's benefits in March 2018 but did not notify the veteran or the petitioner. *Id.* Rather, on November 1, 2018, VA mailed two letters. The first letter, which was sent to Mr. Shorette at the VAMC, indicates that VA appointed a fiduciary other than his spouse to manage his VA benefits, that Mr. Shorette's monthly expenses were identified "[d]uring the field examination interview" as $1,000 for personal needs and $139.78 for the fiduciary's fee, that he had a right to appeal VA's choice of fiduciary, and that VA explained how to initiate that appeal—"To begin your appeal, write us a letter telling us you disagree with our decision and wish to appeal. This letter is called your 'Notice of Disagreement [(NOD)].'" Secretary's Oct. 18, 2022, Resp., Ex. D.

The second letter, which was sent to the petitioner, reflects that VA had "certified a new payee for Charles Shorette" and demanded that the petitioner submit an accounting[4] and forward any of Mr. Shorette's funds in her possession to the new payee. *Id.*, Ex. E. The letter does not include a notice of appellate rights. *See id.* The following day, VA notified the new payee that VA "recognizes [him] as legal custodian to receive funds for Charles Shorette," that VA had resumed

---

[4] Under certain circumstances, VA will require a fiduciary to submit an accounting. *See, e.g.*, 38 C.F.R. §§ 13.280(a), 13.500(b)(2)(ii) (2023); *see also* 38 U.S.C. § 5509(a). For purposes of § 13.280, an accounting is "the fiduciary's written report regarding the income and funds under management by the fiduciary for the beneficiary." 38 C.F.R. § 13.280(b).

the veteran's benefits on November 1, 2018, and that Mr. Shorette's monthly award included an additional allowance for one dependent—his spouse. Secretary's Sept. 13, 2022, Resp., Attach. B.

On November 29, 2018, the "attorney for the guardianship over [Mr.] Shorette" wrote to the Indianapolis fiduciary hub "in response to [the] letter of November 1, 2018, stating that [the petitioner] has been replaced as representative payee." Petitioner's Nov. 4, 2022, Reply, Attach. A at 9; *see id.*, Attach. A at 9-10. Counsel noted in part that the action took place 7 months earlier and that the petitioner had not been provided any explanation for the action, and he submitted a copy of the petitioner's letters of guardianship over the veteran. *Id.*, Attach. A at 9. Additionally, counsel for the guardianship "demand[ed] that [the fiduciary hub]" provide a written explanation for the change of representative payee within 15 days, or in the alternative, counsel "demand[ed] that [the fiduciary hub] immediately restore [the petitioner] as representative payee." *Id.*, Attach. A at 9. Counsel also wrote that if VA did not correct the situation, he would otherwise advise the petitioner of her "legal rights to proceed against [the A]gency." *Id.*, Attach. A at 10.

After receiving no response, the petitioner requested help from a congressional staff member, who later informed the petitioner that she had been told that "a fiduciary who has been removed does not have any rights to appeal"; rather, "[a]ny appeal of the appointment of a successor fiduciary must be submitted and signed by the [v]eteran/[b]eneficiary." *Id.*, Attach. B at 20; *see id.* Attach. B at 18-20. The petitioner also initiated proceedings in state court for VA to reinstate her as representative payee; although she received a favorable ruling from the state court, the Secretary successfully petitioned to have the matter removed to federal court and dismissed for lack of jurisdiction. *Id.*, Attachs. C and D at 22-34.

Meanwhile, the VA Columbia fiduciary hub informed the petitioner in May 2019 and March 2020 that VA had determined that she misused the veteran's funds. *See* Petitioner's Feb. 7, 2023, Resp., Exs. G and H. The attorney for the guardianship of the veteran submitted correspondence on behalf of the veteran's legally appointed guardian, Karen Shorette, in April, May, and October 2020, challenging the misuse determination and informing VA that the veteran's spouse had not received payments pursuant to the 2010 fiduciary agreement to support the veteran's family since April 2018, totaling more than $81,000 as of May 2020. Petitioner's Nov. 4, 2022, Reply, Attach. A at 11-14.

Nearly 3 years after VA began to withhold the veteran's benefits, in March 2021, VA determined that the petitioner did not misuse the veteran's funds. *See* Secretary's Sept. 13, 2022, Resp., Attachs. C and D. As VA did when it appointed a new payee, VA sent a letter to the veteran at the VAMC, informing him of its determination that the petitioner did not misuse his VA benefits, and explaining his right to appeal if he disagreed with the decision. *Id.*, Attach. D. VA sent a second letter to the petitioner, informing her of its determination and that, "[i]f no misuse was found, then no further action is needed on your part." *Id.*, Attach. C.

In response, the attorney for the guardianship wrote to VA in May 2021; he asserted that because the misuse allegation had been the sole reason for removing the petitioner as Mr. Shorette's fiduciary, he anticipated that VA would restore the petitioner to her position. Petitioner's Nov. 4, 2022, Reply, Attach. A at 16. Counsel formally requested that VA (1) "[r]einstate Ms. Shorette as the [r]epresentative [p]ayee for Charles R. Shorette," (2) "[r]equire an accounting from . . . [the]

3

current [r]epresentative [p]ayee, and/or forward to my client all accountings which he has filed," and (3) "[r]eimburse my client for all the monthly payments to which she was and is entitled of $3,212.83[ per ]month, for all the months between April[] 2018 and the date on which you reinstate her." *Id.* VA did not respond. *See* Pet. at 1.

Instead, a February 28, 2022, report of contact reflects that a claims assistant from the fiduciary hub contacted a social worker at the Marion VAMC for assistance in speaking to the veteran. *See* Secretary's Oct. 18, 2022, Resp., Ex. F. The report indicates that Mr. Shorette was satisfied with his current fiduciary and did not want his spouse to manage his VA benefits.[5] *Id.* On the same date, the petitioner reportedly received verbal notice that VA would not reinstate her as payee or provide her with a written determination. *See* Pet. at 1; Secretary's Sept. 13, 2022, Resp. at 2, Attach. F.

Consequently, on April 18, 2022, she requested the Court's intervention: "I am appealing [VA's] decision to not reinstate me as representative payee" and request that VA "turn over the more than $150,000 they are withholding of my husband's compensation that was, according to the [July 2010] original documentation . . . supposed to be used to pay monthly family expenses." Pet. at 1. The Court dismissed that appeal for lack of jurisdiction, but as mentioned above, the Court construed the petitioner's NOA and her opposition to the Secretary's motion to dismiss in that appeal as a petition for extraordinary relief. *See Shorette*, 2022 WL 3152354, at *1-2.

Finally, on August 12, 2022, 2 days after the Court had ordered the Secretary to respond to the petition, a congressional liaison from the fiduciary hub responded to the petitioner's allegation that VA "failed to issue a written determination" as to whether she would be reinstated as representative payee. Secretary's Sept. 13, 2022, Resp., Attach. F. The liaison indicated that VA orally informed the petitioner that she would not be replacing the current fiduciary unless VA has evidence that the veteran's needs are not being met. *Id.* The liaison further informed the petitioner as follows: "Per VA policies, such [a] request to change a fiduciary must come from the veteran[,] as a spouse can't submit that request. If the[] veteran wishes to change his current fiduciary back to [the petitioner,] he must submit documentation stating he wishes to have her manage his funds." *Id.*

## II. PARTIES' ARGUMENTS

### A. Initial Pleadings

As mentioned above, the petitioner asks the Court to compel VA to issue a written decision regarding her entitlement to be reinstated as representative payee for Mr. Shorette, address her complaints that his current fiduciary is violating a July 2010 fiduciary agreement in which VA approved monthly expenses in excess of $3,000 for the support of the veteran's family, and release

---

[5] The fiduciary hub's actions here do not seem to acknowledge that the veteran was diagnosed with primary progressive multiple sclerosis and dementia in 2008 or that he had a court-appointed legal guardian. *See* 38 C.F.R. § 13.100(e)(1) (2023) ("If the beneficiary has a legal guardian appointed to handle his or her affairs, the [h]ub [m]anager will presume that the beneficiary does not have the capacity to state a preference" as to who should serve as fiduciary.).

the withheld funds. Pet. at 1-3; *see* OA at 19:35-21:45, 22:14-23:05. She asserts that, since VA determined in March 2021 that she did not misuse the veteran's funds, she has been unable to obtain a written determination from VA regarding her entitlement to be reinstated as payee. Pet. at 1-2. She alleges that, "as the legal guardian of the veteran, [she] *has* exhausted all available administrative remedies," *id.* at 2, as well as proceedings in state and federal court, which were dismissed for lack of jurisdiction, *id.* at 2-3. The petitioner further asserts that she and the veteran "are suffering ongoing financial harm through the continued failure of [VA] to restore [her] as payee of the veteran's benefits," *id.* at 3, and the failure to "turn over the more than $150,000" VA is withholding from the veteran's compensation, which VA had authorized in July 2010 to pay monthly family expenses, *id.* at 1. *See* Supp. Pet. at 1, Attach. 3 at 5-7.

In response, the Secretary first argues that the petitioner lacks standing to seek reinstatement as a representative payee because only the beneficiary may appeal the hub manager's appointment and removal of a fiduciary. Secretary's Sept. 13, 2022, Resp. at 1, 4 (citing *Freeman v. Shinseki*, 24 Vet.App. 404, 414 (2011) (per curiam order)). In this respect, the Secretary contends that VA policy requires that a request for a change of fiduciary come from the veteran, *id.* at 3-5, and the veteran indicated on February 28, 2022, that "'he did not want his spouse to manage his VA benefit,'" *id.* at 2 (quoting Attach. E). Because the veteran has not appealed VA's determination and an ex-fiduciary or spouse has no authority to appeal fiduciary matters, the Secretary argues that a writ would not be in aid of the Court's jurisdiction. *Id.* at 5.

At the direction of the Court, the petitioner submitted a reply in which she asserts that she has standing in this matter because she filed the petition in her capacity as the veteran's legal guardian, and she attached letters of guardianship over the person and the estate of Charles R. Shorette from the Circuit Court of Grant County, Indiana. Petitioner's Sept. 19, 2022, Reply at 2, Attach. A; *see* Pet. at 3 (submitted by "Karen R[.] Shorette, legal guardian[,] On behalf of the Veteran Charles R. Shorette"). Further, to the extent that VA contacted the veteran on February 28, 2022, she contends that the veteran has advanced primary progressive multiple sclerosis with dementia, and he lacks capacity to render decisions on his own behalf. Petitioner's Sept. 19, 2022, Reply at 3; *see id.*, Attach. C (2010 letter from the Marion VAMC), Attach. D (Sept. 2022 VA progress notes). She thus avers that conducting the interview in her absence violated the order of guardianship and was inconsistent with the veteran's best interests. Petitioner's Sept. 19, 2022, Reply at 3-4.

Pursuant to Court order, the Secretary filed another response, addressing (1) the petitioner's standing to bring this action and (2) the merits of the petition. Secretary's Oct. 18, 2022, Resp. at 1-5. The Secretary asserts that a misuse determination does not involve whether the previous fiduciary should be reinstated, and that the petitioner lacks standing in her capacity as the prior VA fiduciary to bring this action to compel VA to render a decision regarding her entitlement to be reinstated as the representative payee for the veteran. *Id.* at 2-3 (citing *Freeman*, 24 Vet.App. at 404; 38 C.F.R. §§ 13.400, 13.410, 13.600 (2022)).

To the extent that the petitioner is bringing this action on behalf of the veteran, the Secretary maintains that "the reinstatement of a former fiduciary is not a specific right afforded to the beneficiary in the fiduciary program." *Id.* at 3 (citing 38 C.F.R. § 13.30(b) (2022)). In that regard, he avers that, although a beneficiary may "make a 'reasonable request for appointment of

5

a successor fiduciary,'" no request was made in this case. *Id.* (quoting 38 C.F.R. § 13.30(b)(9) (2022)). The Secretary further contends that the Agency's determination on such a request would not be appealable to the Board of Veterans' Appeals (Board) and therefore not in aid of this Court's jurisdiction. *Id.* at 3-4 (citing 38 C.F.R. § 13.600 (2022)).

Next, the Secretary asserts that, although the petitioner may have had standing on behalf of the veteran to appeal the November 2018 decision to appoint a new fiduciary or to remove a fiduciary, no appeal was taken, and the petitioner "fails to assert any notice problems with [the November 1, 2018,] determination." *Id.* at 4 (citing 38 C.F.R. §§ 13.100, 13.500 (2022)). Finally, regarding the petitioner's contention "that the [v]eteran's compensation, which is 'supposed to be used to pay monthly family expenses' is being withheld," the Secretary argues that "no such allegation has been specifically provided to the [A]gency in conjunction with a reasonable request for a successor fiduciary." *Id.* at 3 (quoting Pet. at 1).

In reply, the petitioner argues that she "has always and continues to assert standing as the [v]eteran's legal guardian and spouse." Petitioner's Nov. 4, 2022, Reply at 2. She further notes, pursuant to 38 C.F.R. § 13.100(e), that because the veteran has a legal guardian, "'the [h]ub [m]anager will presume that the beneficiary does not have the capacity to state a preference'" as to who should serve as the fiduciary and that, as the beneficiary's spouse, she has preference over a paid fiduciary. *Id.* (quoting 38 C.F.R. § 13.100(e)(1) (2022) (emphasis omitted)); *see* 38 C.F.R. § 13.100(e)(2) (2022). As for whether she attempted to appeal or make a reasonable request for a replacement beneficiary, the petitioner asserts that she has not been inactive or passive since the November 2018 decision. Petitioner's Nov. 4, 2022, Reply at 3. In particular, she made three calls to VA between November 2018 and January 2019; the attorney for the guardianship submitted correspondence from November 2018 through May 2021 to which he received no response; and she pursued state and federal court actions to have VA recognize her as payee. *Id.*, Attachs. A, C, D. Finally, regarding the veteran's right to appeal the November 2018 determination to appoint a successor fiduciary and remove her as fiduciary, the petitioner points out that VA mailed the November 2018 letter, with notice of appellate rights, to the veteran at the VA medical facility and that she, as his legal guardian, did not receive notice of the formal steps to appeal the change of payee. *Id.* at 3, 5.

## B. Supplemental Pleadings

After the Court referred this matter to panel, the petitioner retained current counsel, and the Court ordered the parties to file additional responses. Specifically, the Court ordered the parties to address whether (1) "the matter at issue [is] better characterized as an attempt by the petitioner, as the veteran's legal guardian, to appeal VA's November 2018 decision to appoint a new fiduciary, or VA's refusal to appoint the petitioner as a successor fiduciary," (2) "an incompetent veteran's legal guardian ha[s] standing to initiate an appeal of" VA's appointment of a successor fiduciary, (3) a legal guardian is "entitled to the same notice or other due process requirements as the veteran," (4) VA's action or inaction has frustrated the Court's jurisdiction or if the petitioner has adequate alternative remedies, and (5) VA's refusal to appoint the petitioner as successor fiduciary is subject to judicial review. *Shorette v. McDonough*, U.S. Vet. App. No. 22-4698 (Jan. 18, 2023) (unpublished per curiam order).

6

The petitioner responds that this matter is best characterized as the veteran, through his legal guardian, seeking to appeal VA's decision to appoint an individual as his VA fiduciary. Petitioner's Feb. 7, 2023, Resp. at 5 (citing *Freeman*, 24 Vet.App. at 414). She asserts that, as the legal guardian over the person and the estate of Mr. Shorette, she has standing to initiate an appeal on his behalf and is entitled to the same notice and other due process as the veteran. *See id.* at 6-8 (citing IND. CODE §§ 29-3-8-2(a), 29-3-8-4, 29-3-8-3; FED. R. CIV. P. 17); *id.* at 10-11 (citing 38 C.F.R. §§ 13.30(b), 13.600(a), (b)(2) (2022)). The petitioner also argues that Congress did not intend for 38 U.S.C. § 5502(a), the statute authorizing the Secretary to appoint a fiduciary, to preempt state law. *Id.* at 8-9.

Next, the petitioner avers that "[t]he Secretary's action to block Mr. Shorette's appeal of the appointment of an individual unknown to him by refusing to recognize [her] guardianship powers, is nothing less than a denial of 'one review on appeal' and access to this Court—both of which are within the Court's jurisdiction to review." *Id.* at 13 (quoting 38 U.S.C. § 7104(a)). And, because the Secretary refuses to acknowledge her legal authority to act on behalf of the veteran, she asserts that she has no adequate alternative remedies. *Id.* at 14. In that regard, the petitioner further maintains that, pursuant to the Court's holding in *Freeman*, a veteran may appeal the appointment of a fiduciary, and the language in section 5502 does not limit the veteran's right of appeal "to only initial appointments or excluding 'replacement' fiduciaries." *Id.* at 14-15.

The Secretary counters that this matter is best characterized as the petitioner's attempt to have herself reinstated as the veteran's VA fiduciary. Secretary's Feb. 28, 2023, Resp. at 1-2. He asserts that the petitioner "wears two hats in these proceedings" and that it is not always clear whether she is speaking for the veteran or for herself. *Id.* at 1; *see id.* at 1-2. He contends that the petitioner's NOA, which the Court construed as a petition, suggests that she initiated these proceedings to have herself reinstated, because (1) the document does not mention the November 2018 decision, (2) the document does not express that she is speaking for the veteran, and (3) she asserted that she received "'a partial decision'" in March 2021—when VA determined that she did not misuse funds as the representative payee—and that VA did not state whether they would "'reinstate me'" as payee. *Id.* at 2 (quoting Pet. at 1). Even assuming that the petitioner was speaking on behalf of the veteran, the Secretary avers that she did not complain about the November 2018 decision to appoint a VA fiduciary but instead referred to VA's March 2021 misuse determination. *Id.*

Turning to the petitioner's standing to appeal the November 2018 fiduciary appointment decision to the Board, the Secretary concedes both that a veteran's legal guardian has standing to initiate an appeal on behalf of the veteran and that the guardian has the same right to receive notice as the veteran. *Id.* at 4-5 (citing 38 U.S.C. § 7105(b)(2)(A) (2022)). The Secretary asserts that the petitioner has not filed an NOD with that decision, but he concedes that VA mailed the November 2018 notice, along with appellate rights, to the veteran at his domiciliary address, rather than to the address of his guardian. *Id.* at 4-5 n.1. The Secretary thus maintains that if the petitioner files an NOD, VA would need to decide whether that service was adequate, and if not, whether the inadequacy tolled the petitioner's time to file an NOD, and whether an NOD, if filed, is timely. *Id.* He also contends that any issues regarding mailing, tolling, and the timeliness of appeal would be subject to review by the Board, and therefore the Court's potential jurisdiction has not been frustrated. *Id.* at 5-7.

7

Finally, regarding the appealability of fiduciary decisions, the Secretary asserts that, although a beneficiary may request a replacement fiduciary, VA's refusal to appoint the petitioner as a successor fiduciary is not appealable. *Id.* at 7, 9 (citing 38 C.F.R. §§ 13.30(b)(9), 13.600 (2022)). He agrees, however, that the appointment of a fiduciary, whether an initial or successor fiduciary, and the removal of a fiduciary are appealable to the Board and to the Court. *Id.* at 7-8; *see* 38 C.F.R. § 13.600(a)(1)-(2) (2022); *see also* 38 C.F.R. §§ 13.100, 13.500 (2022).

## III. LEGAL LANDSCAPE

### A. All Writs Act Authority

Pursuant to the All Writs Act (AWA), the Court has the authority to issue extraordinary writs in aid of its prospective jurisdiction. 28 U.S.C. § 1651(a). "[J]urisdiction to issue a writ of mandamus pursuant to the AWA relies upon not *actual* jurisdiction but *potential* jurisdiction." *In re Fee Agreement of Cox* (*Cox I*), 10 Vet.App. 361, 370 (1997), *vacated on other grounds sub nom. Cox v. West* (*Cox II*), 149 F.3d 1360 (Fed. Cir. 1998).

This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). Hence, it is well established that the AWA does not extend this Court's jurisdiction. *See Cox II*, 149 F.3d at 1363; *see also Heath v. West*, 11 Vet.App. 400, 402-03 (1998). Because the AWA "is not an independent basis of jurisdiction, . . . the petitioner must initially show that the action sought to be corrected by mandamus is within [the] court's statutorily defined subject matter jurisdiction." *Baker Perkins, Inc. v. Werner & Pfleiderer Corp.*, 710 F.2d 1561, 1565 (Fed. Cir. 1983); *see Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (noting that the AWA "is a residual source of authority").

The Court's appellate jurisdiction is governed by section 7252 of title 38, U.S.C., which provides that the Court "shall have exclusive jurisdiction to review decisions of the Board." 38 U.S.C. § 7252(a). The Board, in turn, has jurisdiction to consider "[a]ll questions in a matter which under section 511(a) of . . . title [38] is subject to decision by the Secretary." 38 U.S.C. § 7104(a). And, pursuant to section 511(a), "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a). Therefore, the Court's jurisdiction to issue the order sought by the petitioner pursuant to the AWA depends on whether the grant of the petition could lead to a Board decision over which the Court would have jurisdiction. *See Cox I*, 10 Vet.App. at 371. Answering that question requires the Court to consider whether the case "arises 'under a law that affects the provision of benefits.'" *Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005) (quoting 38 U.S.C. § 511(a)).

Additionally, even when the Court has subject matter jurisdiction over a petition, a petitioner must also establish that he or she has standing to seek the desired relief. *See Freund v. McDonough*, 35 Vet.App. 466, 481 (2022) (order). Standing is a threshold question in all actions. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). Generally, to establish standing, "a party must demonstrate an injury in fact that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Freund*, 35 Vet.App. at

481 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "The injury alleged must be . . . 'distinct and palpable,' . . . and not 'abstract' or 'conjectural' or 'hypothetical.'" *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citations omitted), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). The petitioner bears the burden of establishing jurisdiction, *see McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 188-89 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252, 255 (1992), and standing, *see Skaar v. Wilkie*, 32 Vet.App. 156, 173 (2019) (en banc order) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)), *vacated on other grounds sub nom. Skaar v. McDonough*, 48 F.4th 1323 (Fed. Cir. 2022).

Finally, even in those cases in which the Court is satisfied that it has jurisdiction to provide the requested relief and the petitioner has standing, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976). Accordingly, three conditions must be met before a court may issue a writ: (1) The petitioner must lack adequate alternative means to attain the desired relief, thus ensuring that the writ is not used as a substitute for an appeal; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuance of the writ is warranted. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004).

B. Fiduciary Matters

The Secretary's authority over fiduciary matters derives from 38 U.S.C. § 5502, which provides in pertinent part as follows:

> Where it appears to the Secretary that the interest of the beneficiary would be served thereby, payment of benefits under any law administered by the Secretary may be made directly to the beneficiary or to a relative or some other fiduciary for the use and benefit of the beneficiary, regardless of any legal disability on the part of the beneficiary.

38 U.S.C. § 5502(a)(1). As this Court discussed in *Freeman*, section 5502 "authorizes the Secretary to appoint a fiduciary when 'it appears to the Secretary that the interest of the beneficiary would be served [by the appointment of a fiduciary].'" 24 Vet.App. at 409 (quoting 38 U.S.C. § 5502(a)(1)). "[O]ther statutes and regulations determine the individuals or entities qualified to act as fiduciaries and outline the process the Secretary must follow when appointing a fiduciary." *Id.* In *Freeman*, all parties agreed, and the Court concluded, that section 5502 is a law that affects the provision of benefits as contemplated by section 511(a). *Id.* at 413-14. The Court also rejected the Secretary's contention that the selection of a fiduciary is a discretionary matter without any judicially reviewable standards. *Id.* at 414-17. Accordingly, the Court held that, "if [a] veteran disagrees with the Secretary's manner of selecting a fiduciary," the matter is subject to one review on appeal to the Secretary and subsequently to review by this Court. *Id.* at 414 (citing 38 U.S.C. §§ 7104(a), 7252); *see id.* at 416 (concluding that section 5502 "falls within the congressional grant of jurisdiction given to the Board and to this Court").

After *Freeman*, VA amended its regulations for the fiduciary program to conform to "current law, VA policies and procedures, and VA's reorganization of its fiduciary activities," and to "clarify the rights of beneficiaries in the program, and the roles of VA and fiduciaries in ensuring

9

that VA benefits are managed in the best interest of beneficiaries and their dependents." Fiduciary Activities, 83 Fed. Reg. 32,716, 32,716 (July 13, 2018) (codified at 38 C.F.R. pt. 13). As relevant here, VA promulgated 38 C.F.R. § 13.30, which provides, "[e]xcept as prescribed in this part, a beneficiary in the fiduciary program is entitled to the same rights afforded any other VA beneficiary." 38 C.F.R. § 13.30 (2023). Section 13.30(b) then provides a nonexhaustive list of a beneficiary's rights, which includes the right to "[r]eceive written notice regarding VA's appointment of a fiduciary or any other decision on a fiduciary matter that affects VA's provision of benefits to the beneficiary"; "[a]ppeal to the Board . . . VA's appointment of a fiduciary"; "request a disbursement of funds for current or foreseeable needs" from the fiduciary; and "[s]ubmit to VA a reasonable request for appointment of a successor fiduciary." 38 C.F.R. § 13.30(b)(2), (3), (5), (9) (2023). For purposes of § 13.30(b)(9), VA defines a "reasonable request" as "a good faith effort to seek replacement of a fiduciary, if . . . [t]he beneficiary's current fiduciary receives a fee deducted from the beneficiary's account under § 13.220 and the beneficiary requests an unpaid volunteer fiduciary who ranks higher in the order of preference under § 13.100(e)." 38 C.F.R. § 13.30(b)(9)(i) (2023).

In that regard, § 13.100(e) provides that, in selecting a fiduciary, the hub manager[6] will first consider "[t]he preference stated by the beneficiary in the fiduciary program, if the beneficiary has the capacity to state such a preference." 38 C.F.R. § 13.100(e)(1) (2023). However, in those cases when "the beneficiary has a legal guardian appointed to handle his . . . affairs, the [h]ub [m]anager will presume that the beneficiary . . . [lacks] the capacity to state a preference and will consider individuals and entities in the order of preference prescribed in paragraphs (e)(2) through (10) of [§ 13.100]." *Id.* Of note, the beneficiary's spouse and "a[n] individual or entity who has been appointed by a court with jurisdiction to handle the beneficiary's affairs," 38 C.F.R. § 13.100(e)(8) (2023), rank higher than a paid fiduciary, *see* 38 C.F.R. § 13.100(e)(2), (8), (9) (2023).

A fiduciary in receipt of VA funds "on behalf of a beneficiary in the fiduciary program must fulfill certain responsibilities" to the beneficiary and to VA. 38 C.F.R. § 13.140 (2023). "In all cases, the fiduciary must disburse or otherwise manage funds according to the best interests of the beneficiary and the beneficiary's dependents and in light of the beneficiary's unique circumstances, needs, desires, beliefs, and values." 38 C.F.R. § 13.140(a)(1).

If the hub manager receives any information "regarding possible misuse of VA benefits by a fiduciary, the [h]ub [m]anager may, upon his or her discretion, investigate the matter and issue a misuse determination in writing." 38 C.F.R. § 13.400(b) (2023). The Secretary's regulation delineates what information will be included in a misuse determination, *id.*, and requires the hub manager to provide written notice of the determination to the fiduciary, the beneficiary or the beneficiary's legal guardian, and the beneficiary's accredited representative, attorney, or claims agents, 38 C.F.R. § 13.400(c) (2023).

Additionally, "[t]he [h]ub [m]anager may remove a fiduciary if the [h]ub [m]anager determines that fiduciary services are no longer required for a beneficiary or removal is in the

---

[6] "Hub [m]anager means the individual who has authority to oversee the activities of a VA [f]iduciary [h]ub or the Veterans Service Center Manager of the Manila, Philippines, VA [r]egional [o]ffice." 38 C.F.R. § 13.20.

beneficiary's interest." 38 C.F.R. § 13.500 (2023). Reasons why a fiduciary may be removed include, but are not limited to, a "beneficiary['s] request[] [for] appointment of a successor fiduciary under § 13.100" and if "VA or a court with jurisdiction determines that the fiduciary misused or misappropriated VA benefits." 38 C.F.R. § 13.500(a)(1)(ii), (2)(iv) (2023).

Further, to implement the Court's holding in *Freeman*, the Secretary promulgated 38 C.F.R. § 13.600, titled "Appeals." That provision provides as follows: "Except as prescribed in paragraph (a) of this section, VA decisions regarding fiduciary matters are committed to the Secretary of Veterans Affairs' discretion by law, as delegated to subordinate officials under this part, and cannot be appealed to the Board . . . or any court." 38 C.F.R. § 13.600 (2023). Paragraph (a), in turn, lists the following fiduciary matters as decisions that may be appealed to the Board:

> (1) The [h]ub [m]anager's appointment of a fiduciary under § 13.100;
> (2) The [h]ub [m]anager's removal of a fiduciary under § 13.500;
> (3) The [h]ub [m]anager's misuse determination under § 13.400;
> (4) The VA [r]egional [o]ffice Director's final decision upon reconsideration of a misuse determination under § 13.400(d); and
> (5) The Director of the Pension and Fiduciary Service's negligence determination for purposes of reissuance of benefits under § 13.410.

38 C.F.R. § 13.600(a) (2023). Additionally, regarding fiduciary matters that are appealable under § 13.600, "VA will provide to the beneficiary and the beneficiary's representative and legal guardian, if any, a written decision," which will include "[a] clear statement of the decision," "[t]he reason(s) for the decision," "[a] summary of the evidence considered in reaching the decision," and "[t]he necessary procedures and time limits to initiate an appeal of the decision." 38 C.F.R. § 13.20.

In 2018, when VA informed Mr. Shorette that it had appointed a new fiduciary to manage his VA benefits, 38 U.S.C. § 7105(a) provided in relevant part that "[a]ppellate review will be initiated by a[n NOD] and completed by a [S]ubstantive [A]ppeal after a [S]tatement of the [C]ase [(SOC)] is furnished." 38 U.S.C. § 7105(a) (2012 & Supp. IV 2017).[7] An NOD must have been filed within 1 year from the date notice of the decision being appealed was provided, 38 U.S.C. § 7105(b)(1), and may have been filed "by the claimant, the claimant's legal guardian, or such accredited representative, attorney, or authorized agent as may be selected by the claimant or legal guardian," 38 U.S.C. § 7105(b)(2)(A).

Further, under the regulations in effect at the time, appeals generally were initiated by filing an NOD on a standard form provided by VA. 38 C.F.R. § 20.201(a)(1) (2018) (redesignated as 38 C.F.R. § 19.21, effective Feb. 19, 2019). However, for those cases in which VA did not provide

---

[7] Congress amended portions of section 7105 as part of the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). Those changes, however, did not become effective until February 19, 2019. *See* Pub. L. No. 115-55, § 2(x), 131 Stat. at 1115 (providing the effective date of statutory amendments); VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 170 (Jan. 18, 2019) (final rule); VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019) (providing notice of the effective date for regulatory amendments).

a form, VA defined an NOD as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result." 38 C.F.R. § 20.201(b) (2018). The NOD "must [have] be[en] in terms which can be reasonably construed as disagreement with that determination and a desire for appellate review." *Id.* Whether a document constitutes an NOD is a legal question subject to de novo review by the Court. *Palmer v. Nicholson*, 21 Vet.App. 434, 436 (2007).

## IV. ANALYSIS

With this understanding of the statutory and regulatory framework, the Court turns now to the primary issues presented here. As mentioned, the parties disagree as to how the Court should characterize the actions taken by the petitioner; specifically, whether her actions reflected an attempt to appeal VA's November 2018 decision to appoint a new fiduciary, or an attempt to appeal VA's refusal to appoint her as a successor fiduciary. Relatedly, they also dispute whether she had been acting before the Agency and initiated these Court proceedings on behalf of the veteran, as his legal guardian, or in her own right as the veteran's former fiduciary. In light of the Secretary's arguments that the petitioner has no rights under the fiduciary program in her capacity as a spouse or former fiduciary and that a refusal by VA to appoint a successor fiduciary is not an appealable issue that could lead to a Board decision, both matters affect whether the petitioner has standing and whether the Court has jurisdiction. *See* Secretary's Oct. 18, 2022, Resp. at 3-4 (citing *Freeman*, 24 Vet.App. at 404; 38 C.F.R. §§ 13.30(b)(9), 13.400, 13.410, 13.600 (2023)).

### A. Standing and Jurisdiction

#### 1. Appointment or Removal of Fiduciary

To begin, it is clear that, as a participant in VA's fiduciary program, the veteran has rights that he could seek to enforce on his own behalf. *See* 38 C.F.R. §§ 13.30(b)(3), 13.600(a) (2023); *see also Defs. of Wildlife*, 504 U.S. at 560 (noting that the first element of standing requires a litigant to show an "'injury in fact'—an invasion of a legally protected interest"); *Warth*, 422 U.S. at 498 ("[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). He would thus have standing to petition the Court for a writ, alleging that VA had failed to respond to his disagreement with VA's appointment of a paid fiduciary or VA's removal of a fiduciary. *See Freeman*, 24 Vet.App. at 414; *see also* 38 C.F.R. §§ 13.30(b)(3), 13.500, 13.600(a)(1), (2) (2023). Indeed, the veteran could show that he was harmed by VA's actions and that a favorable Court ruling could help redress that harm. *See Defs. of Wildlife*, 504 U.S. at 560-61. The questions here are whether the petitioner, in her capacity as his spouse or former fiduciary, has her own right to challenge VA's actions or whether she, in her capacity as the veteran's legal guardian, may seek to enforce the veteran's rights.

As to the latter question, the parties agree, and the Court concludes, that the petitioner, as the veteran's legal guardian, steps into the shoes of the veteran and therefore is authorized to act on his behalf in proceedings before VA and this Court. *See* Secretary's Feb. 28, 2023, Resp. at 3 ("The Secretary does not contest that [the p]etitioner has authority to act on behalf of the [v]eteran."); *id.* at 4 ("[T]he [v]eteran's legal guardian has standing to initiate an appeal.");

12

Petitioner's Feb. 7, 2023, Resp. at 6-7 (noting that the February 2009 letters of guardianship explicitly granted authority to act as guardian of the person and of the estate); *see also* IND. CODE §§ 29-3-8-2, 29-3-8-3, and 29-3-8-4. In that regard, Congress expressly authorized a claimant's legal guardian to file an NOD to initiate appellate review of a decision by the Secretary, *see* 38 U.S.C. § 7105(b)(2) (2012 & Supp. IV 2017), 38 U.S.C. § 7105(b)(2)(A) (2018 & Supp. III 2022), and VA's *Fiduciary Program Manual* (*FPM*) recognizes that a beneficiary's legal guardian is an authorized party for purposes of submitting a fiduciary related appeal, *see* FPM, pt. III, ch. 1, sec. A.2.b. Further, the Secretary's regulations require VA to provide written notice to a beneficiary's legal guardian of any decision in a fiduciary matter that is appealable to the Board. *See* 38 C.F.R. § 13.20; *see also* 38 C.F.R. §§ 13.30(b)(2), 13.400(c)(2), 13.500(b)(1)(i) (2023).

Turning to whether the petitioner requested the Court's intervention in her capacity as Mr. Shorette's legal guardian, the Court concludes that she did. She identified herself as the veteran's legal guardian in the construed petition and argued, "as the legal guardian of the veteran, [that she] *has* exhausted all available administrative remedies." Pet. at 2. The petitioner asserted that both she *and* the veteran were "suffering ongoing financial harm" as a result of VA's failure to restore her as payee of the veteran's benefits and pay their monthly family expenses, and she signed the document "Karen R[.] Shorette, legal guardian[,] On behalf of the Veteran Charles R. Shorette." *Id.* at 3. Additionally, in her August 28, 2022, supplement to the petition, the petitioner submitted evidence that she has been the veteran's guardian from February 2009 and provided a summary of the events leading up to the petition, including VA's November 2018 decision to appoint a new fiduciary, VA's recognition that the misuse allegations were unsubstantiated, and VA's refusal to issue a written decision regarding whether the petitioner should be restored as the veteran's payee. Supp. Pet. at 1-2, Attach. 1 at 3, Attach. 4 at 11-15.

Next, regarding the petitioner's actions before the Agency, the Court similarly concludes that the petitioner has been acting in her capacity as the veteran's legal guardian. Less than 1 month after VA appointed a paid fiduciary and removed the petitioner as the veteran's fiduciary, the "attorney for the guardianship over [Mr.] Shorette" wrote to the Indianapolis fiduciary hub. Petitioner's Nov. 4, 2022, Reply, Attach. A at 9. Counsel for the guardianship requested an explanation for VA's decision and demanded that VA restore his client, i.e., the veteran's legal guardian, as payee. *See id.* Further, the petitioner and her counsel reached out to VA on several occasions, indicating that the newly appointed fiduciary had not paid the veteran's familial expenses agreed upon in the 2010 fiduciary agreement, and the petitioner requested that VA require the fiduciary to return all funds not spent on behalf of the veteran. *See* Petitioner's Nov. 4, 2022, Reply at 3-4, Attach. A at 11-13, 16 (April 25, 2020, May 25, 2020, and May 14, 2021, letters); *id.*, Attach. A at 18-19 (outlining the petitioner's telephone communications with VA from November 2018 to January 2019 and asserting that it had been "10 months since [VA] began withholding the [veteran's] funds, and [she] still ha[s] no idea what is going on").

Based on the foregoing, the Court is satisfied that the petitioner, as the veteran's legal guardian, has standing to bring this petition on the veteran's behalf, and the Court thus will not address whether the petitioner, as the veteran's spouse or former fiduciary, may challenge VA's actions. *See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) (Under the doctrine prohibiting advisory opinions, "federal courts are to decide only 'actual controversies by judgment which can be carried into effect, and not to give opinions upon

moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it.'" (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960))); *Norvell v. Peake*, 22 Vet.App. 194, 200 (2008). But before we turn to the merits of the petition, the Court must determine whether granting the petition could lead to a Board decision over which the Court would have jurisdiction, which, as mentioned above, requires the Court to consider whether the case "arises 'under a law that affects the provision of benefits.'" *Bates*, 398 F.3d at 1359 (quoting 38 U.S.C. § 511(a)). We conclude that it does.

In that regard, the Court in *Freeman* held that section 5502, which authorizes the Secretary to appoint a VA fiduciary, is a law that affects the provision of benefits and therefore, a beneficiary who disagrees with VA's selection of a fiduciary may appeal to the Board and this Court. *Freeman*, 24 Vet.App. at 414. Here, the construed petition and related filings reflect that from November 1, 2018, the petitioner, as the veteran's legal guardian, did not agree with VA's appointment of a paid fiduciary or her resulting removal as fiduciary, and she asks the Court to compel VA to issue an appealable decision regarding this matter. Because this matter involves VA's appointment and removal of a fiduciary, matters which VA has explicitly provided by regulation "may [be] appeal[ed] to the Board," the Court concludes, pursuant to *Freeman*, 24 Vet.App. at 414, that issuing a writ would be in aid of the Court's jurisdiction.[8] 38 C.F.R. § 13.600(a)(1), (2) (2023). Accordingly, the Court may turn to whether the petitioner is entitled to a writ regarding this matter.

*2. Familial Expenses*

The petitioner also asks the Court to compel VA to address her repeated complaints that the veteran's current fiduciary is violating the July 2010 fiduciary agreement in which VA approved monthly expenses in excess of $3,000 to support the veteran's family, and to compel VA to release the withheld funds. However, despite her complaints, the petitioner does not assert that she asked the current fiduciary to pay familial expenses, nor has she pointed to any evidence reflecting that she submitted a misuse report to the fiduciary hub. *See* 38 C.F.R. § 13.400(b) (2023). Additionally, the petitioner has not argued or demonstrated whether a decision addressing her allegations could lead to a final Board decision over which the Court would have subject matter jurisdiction. *See McNutt*, 298 U.S. at 188-89; *Bethea*, 2 Vet.App. at 255. Although VA's regulations contemplate that the veteran—and thus his guardian—could report a misuse of benefits or request that the fiduciary make a disbursement of funds, the petitioner's counsel does not explain whether or how VA's or the fiduciary's responses to any such requests could be appealable, nor does the petitioner seek to challenge VA's regulation delineating what fiduciary issues are appealable to the Board. *Compare* 38 C.F.R. § 13.30(b)(1)-(11) (2023) (providing a nonexhaustive list of the *rights* of beneficiaries in the fiduciary program, including the right to request a disbursement of funds from their fiduciary), *and* 38 C.F.R. § 13.400(b) (2023) (providing that, upon receipt of information regarding possible misuse, the hub manager "may, upon his or her discretion, investigate the matter"), *with* 38 C.F.R. § 13.600 (2023) (providing that VA decisions

---

[8] Consequently, the Court need not address the Secretary's contention that a beneficiary in the VA fiduciary program has no right to appeal VA's decision on a request for a successor beneficiary and thus could not lead to a Board decision appealable to this Court. *See Teva Pharms. USA, Inc.*, 482 F.3d at 1337-38.

regarding fiduciary matters are committed to the Secretary's discretion and cannot be appealed to the Board or any court, except for the five types of decisions delineated in § 13.600(a)).

Accordingly, the Court cannot conclude, separate from her disagreement with VA's November 1, 2018, decision to appoint a paid fiduciary and remove her as fiduciary, that we may further address this matter, and the Court will dismiss this part of the petition because the petitioner has not demonstrated that VA's failure to act is frustrating the Court's prospective jurisdiction. To be clear, the Court's conclusion here is based upon the petitioner's failure to show that the Court's intervention is warranted at this time. We do not opine on what recourse the petitioner may have at the Agency or whether she could have any recourse at the Court if the fiduciary is inappropriately withholding funds. Nonetheless, nothing in this order prevents the petitioner from attempting once more to have VA address this matter, and if VA issues an unfavorable decision, the question of whether it is a matter within the Board's jurisdiction is itself a matter subject to review by this Court. *See King v. Nicholson*, 19 Vet.App. 406, 409 (2006) (acknowledging that "this Court always has jurisdiction to assess its own jurisdiction[,]" which "includes the power to review a determination by the Board that it lacks jurisdiction over a particular claim"). Further, the Court presumes that, if the petitioner were to succeed in her current appeal, as discussed below, under § 13.600(a)(1), (2), VA would provide written notice of the removal to the current fiduciary and "[i]nstruct the fiduciary regarding the fiduciary's responsibilities prior to transfer of funds to a successor fiduciary." 38 C.F.R. § 13.500(b)(i), (ii) (2023).

## B. Entitlement to a Writ

As mentioned, "[t]he remedy of mandamus is a drastic one," *Kerr*, 426 U.S. at 402, and the petitioner bears the burden of establishing three conditions, *Cheney*, 542 U.S. at 380-81; *see Erspamer v. Derwinski*, 1 Vet.App. 3, 9 (1990). The petitioner must show that she lacks adequate alternative means to attain the desired relief and that she is clearly and indisputably entitled to the writ, and the Court must be convinced, given the circumstances, that issuance of the writ is warranted. *See Cheney*, 542 U.S. at 380-81. As explained below, the Court concludes that the petitioner, as the veteran's legal guardian, meets all three conditions, and the Court will issue a writ directing the Secretary to issue an SOC responsive to the petitioner's November 29, 2018, NOD concerning the appointment of a paid fiduciary and her removal as the veteran's fiduciary.

The lengthy history of the petitioner's attempts, which began in 2018, to have VA respond to her disagreement with VA's appointment of a paid fiduciary, including her resulting removal as fiduciary, and to acknowledge her authority to speak for the veteran as his legal guardian, demonstrates that the petitioner has a clear and indisputable right to a writ and that she lacks adequate alternative means to obtain the desired relief. To begin with, VA suspended the veteran's benefits without notice in March 2018.[9] *See* Petitioner's Feb. 7, 2023, Resp., Ex. G at 3. Then, on November 1, 2018, VA appointed a paid fiduciary and removed the petitioner as fiduciary. *See* Secretary's Oct. 18, 2022, Resp., Exs. D and E. Despite regulations that require VA to serve a beneficiary's legal guardian with written notice of any decision that is appealable under § 13.600, the Secretary concedes that VA failed to comply with the regulation and serve the petitioner as the

---

[9] The Court recognizes that 38 U.S.C. § 5502(b) authorizes the Secretary to suspend payments to a fiduciary under certain circumstances, "after reasonable notice," but there is nothing in the record, nor has the Secretary otherwise indicated, that VA complied with section 5502(b).

15

veteran's legal guardian. *See* Secretary's Feb. 28, 2023, Resp. at 4-5 n.1; *see also* 38 C.F.R. §§ 13.20, 13.30(b)(2) (2023). Instead, VA sent its decision with notice of appellate rights to Mr. Shorette, who VA had deemed incapable of handling his affairs. *See* Secretary's Oct. 18, 2022, Resp., Ex. D; Supp. Pet., Attach 2 at 4. And, in seeking to justify these actions, VA sought and relied on the preference of the incompetent veteran, in contravention of VA's regulations. Secretary's Sept. 13, 2022, Resp. at 2; *see* 38 C.F.R. § 13.100(e)(1) (2023).

Notwithstanding VA's failures, the petitioner through the "attorney of record for the guardianship of Charles Shorette" contacted VA 28 days after VA appointed a paid fiduciary. Petitioner's Nov. 4, 2022, Reply, Attach. A at 9. At oral argument, the Court questioned the Secretary regarding the status of this letter and whether it is properly construed as an NOD with VA's November 1, 2018, appointment/removal determination. OA at 39:00-39:48, 41:05-42:08, 44:31-45. Although the Secretary conceded that the petitioner was not required to file an NOD on a specific VA form,[10] *id.* at 43:50-44:30, he maintained that the letter could be read a number of ways. *Id.* at 42:12-31, 48:50-49:25, 51:15-40. Additionally, even though the Secretary conceded that the Court could determine in the first instance whether the letter constitutes an NOD, he urged the Court to deny the petition and require the petitioner to ask VA to decide whether the letter constitutes an NOD. *Id.* at 52:40-54:07, 1:09:25-1:10:05; *see id.* at 42:50-43:22.

The Court declines the Secretary's request and concludes, as a matter of law, that the petitioner's November 29, 2018, letter is an NOD expressing disagreement with VA's November 1, 2018, decision to appoint a new fiduciary and remove the petitioner as the veteran's fiduciary. *See Palmer*, 21 Vet.App. at 436. Counsel identified the petitioner as Mr. Shorette's legal guardian, enclosed letters of guardianship, and referred to VA's November 1, 2018, decision to replace the petitioner as representative payee. Petitioner's Nov. 4, 2022, Reply, Attach. A at 9. Although counsel did not explicitly refer to the "appointment" or the "removal" of a fiduciary, "both the actual wording of the communication and the context in which it was written" indicates that it was an NOD with the November 1, 2018, decision. *Jarvis v. West*, 12 Vet.App. 559, 561 (1999). Counsel demanded that the fiduciary hub "immediately restore [the petitioner] as representative payee" and asserted that he would otherwise advise the petitioner of her "legal rights to proceed against [the A]gency." Petitioner's Nov. 4, 2022, Reply, Attach. A at 9-10. Certainly, by requesting that the petitioner be restored as payee and referring to additional action should VA fail to comply, the letter may reasonably be construed as expressing disagreement with VA's decision and a desire for appellate review. *Id.*, Attach. A at 9-10; *see* 38 C.F.R. § 20.201(b) (2023).

The Court's conclusion is buttressed by the extensive history of the petitioner's attempts to be recognized by VA as the veteran's legal guardian who is authorized to act on his behalf. As outlined above, the record reflects that the attorney for the guardianship repeatedly corresponded with VA from 2018 through 2021; the petitioner sought the assistance of a congressional staff member; and she filed suit in state court to be recognized as the veteran's legal guardian and fiduciary. Other than to have the state court action removed to federal court and dismissed for lack of subject matter jurisdiction, VA has consistently refused to recognize the petitioner's authority and responsibility, as the veteran's duly appointed legal guardian, to act on his behalf. *See generally*

---

[10] Of note, VA's November 1, 2018, letter instructed the veteran on how to appeal the decision: "To begin your appeal, write us a letter telling us you disagree with our decision and wish to appeal. This letter is called your '[NOD].'" Secretary's Oct. 18, 2022, Resp., Ex. D.

*In re Guardianship of Shorette*, 2020 WL 956276 (S.D. Ind. Feb. 27, 2020) (order), *vacated in part on recons.*, 2020 WL 1867105 (S.D. Ind. Apr. 14, 2020) (order).

VA did not respond to the April 2020, May 2020, or May 2021 letters from the guardianship attorney, all of which reflect that the fiduciary appointed in 2018 had not paid the veteran's familial expenses. *See* Petitioner's Nov. 4, 2022, Reply at 3 4. As mentioned, the evidence before the Court includes a July 2010 fiduciary agreement, which reflects that VA authorized the petitioner, as the veteran's fiduciary, to make certain monthly disbursements covering mortgage, utility, and insurance expenses for the family home in which she resides. *See* Supp. Pet., Attach. 3 at 6. Although there is some evidence that VA may have later concluded that the petitioner had sufficient other resources to support herself and the family residence, it is not clear how VA reached that conclusion or whether the petitioner, as the veteran's legal guardian, was consulted. *See* Secretary's Sept. 13, 2022, Resp. Attach. F. Further, the petitioner recently submitted additional evidence suggesting that the current fiduciary was not aware that the veteran is married, to the extent that the fiduciary has filed income taxes on the veteran's behalf as a single taxpayer. Petitioner's July 19, 2023, *Solze* Notice, Ex. Thus, it is unclear what amount of the veteran's income VA believes the petitioner is receiving as the veteran's spouse and legal guardian, whether VA is no longer directing the veteran's disability funds toward maintaining the family home because it believes that sufficient funds are available from other sources, or whether VA believes that the veteran has no dependents.

Additionally troubling is that the accusations, which caused VA to remove the petitioner as fiduciary and appoint a paid fiduciary in her stead, proved to be false. *See* Secretary's Sept. 13, 2022, Resp. Attachs. C and D. But rather than acknowledge this mistake or that the petitioner, as the veteran's spouse and legal guardian, has priority over a paid fiduciary, *see* 38 C.F.R. § 13.100(e) (2023), VA has refused to restore the petitioner and the veteran to the circumstances that existed before VA's mistake. Instead, VA has asserted, without acknowledging the petitioner's status as Mr. Shorette's legal guardian, that only the veteran, who has been deemed incompetent, may request a change in fiduciary. *See* Secretary's Sept. 13, 2022, Resp., Attach. F (Aug. 12, 2022, letter); Petitioner's Nov. 4, 2022, Reply at 18 (email correspondence with congressional staff member).

Given the history of proceedings in the matter and VA's persistent refusal to act, the Court is satisfied that, as to the last *Cheney* condition, the circumstances of this case warrant issuance of a writ. *Cheney*, 542 U.S. at 381. Because the petitioner, as the veteran's legal guardian, is clearly and indisputably entitled to appeal to the Board the November 1, 2018, decision to appoint a paid fiduciary and remove her as fiduciary, the Court concludes, as a matter of law, that she filed an NOD with that decision on November 29, 2018; and because VA refuses to recognize her disagreement, the Court concludes that a writ is necessary to protect its potential jurisdiction. *See Freeman*, 24 Vet.App. at 417. Thus, similar to the *Freeman* Court, we will order the Secretary to issue an SOC based upon the petitioner's November 29, 2018, NOD concerning the appointment of a paid fiduciary and her removal as the veteran's fiduciary. *See Freeman*, 24 Vet.App. at 417-18. If VA does not act favorably on her NOD, the petitioner may pursue an appeal to the Board. *See id.*

17

## C. Motion for Injunction

As a final matter, the Court will address the petitioner's October 3, 2022, motion for an injunction prohibiting VA from making "any changes, reductions, reallocations, etc." to the veteran's benefits pending a final resolution of this matter. Petitioner's Oct. 3, 2022, Motion at 1. In support of her request, the petitioner asserts that, on September 26, 2022, she accessed va.gov to keep apprised of the veteran's status and saw a notice indicating that VA had finished reviewing the veteran's claim. *Id.* She expresses concerns of "fraud, waste, and abuse," noting that, as the veteran's legal guardian, she had not submitted a claim on his behalf and that the veteran is incapable of making legally binding decisions. *Id.*

The Secretary counters that the allegations are unsupported, noting that the petitioner failed to contact the Agency or her representative before the Agency. Secretary's Oct. 17, 2022, Resp. at 1. He further asserts that the petitioner has not shown "(1) a likelihood of success on the merits of the issue of whether a legal right has been invaded by VA action, (2) irreparable injury, and (3) ripeness." *Id.* at 2 (citing *Kaplan v. Brown*, 7 Vet.App. 425, 428 (1995) (per curiam order)).

Rule 8 of the Court's Rules of Practice and Procedure (Rules) permits a party to seek extraordinary relief to suspend Secretarial action while the Court considers an appeal or petition currently before it. *See* U.S. VET. APP. R. 8. Generally, to invoke Rule 8, the movant must establish "the likelihood of success on the merits" and that the movant "will suffer irreparable harm in the absence of such relief." *El Malik v. Peake*, 22 Vet.App. 183, 185 (2008) (per curiam order); U.S. VET. APP. R. 8(b)(2) (requiring that a motion to suspend Secretarial action "be supported by affidavits or other sworn statements addressing any facts in dispute").

Here, despite the Court's concern that the petitioner may have been unaware whether a claim had been submitted on the veteran's behalf, the petitioner has not in her motion carried her burden of demonstrating entitlement to injunctive relief. In that regard, even if the Court liberally construes the petitioner's allegations made while she was self-represented, she did not address any of the requisite criteria for establishing the requested relief, and her later-appointed counsel did not elaborate during oral argument on why she was entitled to this relief. *See El Malik*, 22 Vet.App. at 185; *see generally Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court is unable to find error when arguments are undeveloped). Accordingly, the Court will deny the petitioner's motion.

## V. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the petitioner's October 3, 2022, motion for an injunction is denied. It is further

ORDERED that the Clerk file the petitioner's August 28, 2022, correspondence as a supplement to the petition. It is further

ORDERED that the April 18, 2022, petition for extraordinary relief in the form of a writ of mandamus is GRANTED IN PART and DISMISSED IN PART; the Secretary is ordered to

issue an SOC responsive to the petitioner's November 29, 2018, NOD regarding the appointment of a paid fiduciary and concomitant removal of the veteran's legal guardian as his fiduciary.

DATED: August 24, 2023                                              PER CURIAM.